FILED
NOVEMBER 13, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LASALLE BUSINESS CREDIT, LLC,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>KEY EQUITY CAPITAL CORPORATION,<br><br>　　　　　Defendant. | No.<br><br>**07 C 6438**<br><br>**JUDGE PALLMEYER<br>MAGISTRATE JUDGE BROWN** |

## COMPLAINT

Plaintiff, LaSalle Business Credit, LLC ("LaSalle"), by and through it undersigned counsel, and as its Complaint against Defendant, Key Equity Capital Corporation ("Key"), states as follows:

### Nature of the Action

1. This action arises from Key's breach of obligations owed to LaSalle under an Amended and Restated Limited Guaranty Agreement ("Guaranty"), a copy of which is attached hereto as Exhibit "A". Underlying events of default have occurred which have triggered Key's obligation to make payment to LaSalle, as agent for itself and other lenders, in the amount, exclusive of interest, fees and costs, of $4,500,000.

### The Parties

2. LaSalle is a Delaware limited liability company with its principal place of business in Chicago, Illinois. The membership of LaSalle is set forth in the attached Local Rule 3.2 Affiliates Disclosure Statement, incorporated herein.

3. Key is an Ohio corporation having its principal place of business in Cleveland, Ohio.

CHICAGO/#1711259.3

## Jurisdiction and Venue

4. Jurisdiction of this Court over this matter is proper pursuant to 28 U.S.C. § 1332, insofar as the amount in controversy, exclusive of interest and costs, is in excess of $75,000, and the parties are citizens of different states.

5. Jurisdiction is also proper pursuant to the terms of the Guaranty, wherein Key consented to the jurisdiction of any federal court sitting in the State of Illinois with respect to this action.

6. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Illinois, including but not limited to the negotiation and execution of the Guaranty.

7. Venue is also proper pursuant to 28 U.S.C. §1391(c) insofar as Key is subject to the personal jurisdiction of this district at the time of this action's commencement and Key consented to this Court's jurisdiction in the Guaranty.

## Common Facts

### Relevant Background

8. LaSalle is a secured lender holding first priority liens on, and security interests in, substantially all of the assets of Blackhawk Automotive Plastics, Inc. ("Blackhawk" or "Borrower").

9. Key is a creditor of, and holder of an indirect equity interest in, Blackhawk.

10. On October 6, 2006, LaSalle and Blackhawk entered into a Loan and Security Agreement, a true and correct copy which is attached hereto as Exhibit "B" (as same has been amended, modified from time to time, the "Loan Agreement").

11. Under the terms of the Loan Agreement, LaSalle, as agent for itself and Citizens Bank, a Michigan corporation, made certain loans and other extensions of credit available to Blackhawk in consideration for a first priority security interest in substantially all of Blackhawk's assets.

**The Key Guaranty**

12. On or about August 1, 2007, Key, as Guarantor, executed and delivered the Guaranty to LaSalle, as agent for itself and other lenders.

13. Section 2 of the Guaranty provides as follows:

> The Guarantor hereby irrevocably and unconditionally guarantees, until this Guaranty Agreement is terminated pursuant to Section 13(i), (i) *the full and prompt payment and collection of the entire amount of the Over Advance, in an aggregate amount not to exceed $2,000,000 at any time,* plus *(ii) the full and prompt payment and collection when due of all Liabilities of the Borrower, provided however, Guarantor's maximum liability under this clause (ii) (and no other clause of this Guaranty Agreement) will not exceed $2,500,000 at any time*, plus *(iii) any and all reasonable out-of-pocket expenses (including reasonable out-of-pocket counsel fees and expenses) incurred by* [LaSalle] *and the Lenders in enforcing any rights under this Guaranty Agreement and all interest accruing in connection therewith after demand for payment is made under this Guaranty Agreement* (all such obligations therewith after demand for payment is made under this Guaranty Agreement (all such obligations being referred to herein as of the "Guaranteed Obligations"). The Guarantor also acknowledges and agrees that [LaSalle], on behalf of the Lenders, may demand payment from the Guarantor of any portion of the Guaranteed Obligations without limiting or restricting in any way the Lenders' ability to demand future payments under this Guaranty Agreement for the remaining Guaranteed Obligations. *Notwithstanding the foregoing, the Guarantor shall not be required to make any payment of the Guaranteed Obligations hereunder until the earlier to occur of (x) March 31, 2008 and (y) the occurrence of a Forbearance Event of Default (as defined in that certain Forbearance Agreement and Amendment to Loan Agreement and Letter Agreement effective as of March 28, 2007 among Borrower, Agent and Lenders,* as amended restated, modified or substituted from time to time). (underscores in original) (italics added as emphasis).

14. The Guaranty has not been terminated, but rather remains in full force and effect.

**Forbearance Agreement and Amendments Thereto**

15. Approximately five (5) months after the execution of the Loan Agreement, certain Events of Default (as that term is defined in the Loan Agreement), occurred and were continuing.

16. On March 28, 2007, LaSalle and Blackhawk entered into a Forbearance Agreement and Amendment to Loan Agreement and Letter Agreement ("Forbearance Agreement"), a copy of which is attached hereto as Exhibit "C," pursuant to which LaSalle agreed, *inter alia*, to forbear from exercising certain rights, powers and remedies relating to certain enumerated "Current Defaults" (as that term is defined in the Forbearance Agreement).

17. The Forbearance Agreement defined a "Forbearance Event of Default" to include the following:

    (a) Borrower shall fail to observe or perform any term, covenant or agreement binding on it contained in this Agreement, or any agreement, instruction or document executed in connection herewith, including, without limitation, any term, condition or provision in Section 5 of this Agreement;

    (b) An Event of Default or a Default which, except for passage of time or notice would constitute an Event of Default, shall have occurred and be continuing under the Loan Agreement (other than the Current Defaults that exist as to the date of this Agreement);

    (c) The Borrower files a petition for relief under any Chapter of the Bankruptcy Code or an order for relief under the Bankruptcy Code is entered against the Borrower or an involuntary petition under the Bankruptcy Code against the Borrower is not dismissed within 45 days of the filing thereof; or

    (d) Any instrument, document, report, schedule, agreement, representation or warranty, oral or written, made or delivered to the Agent and/or Lenders by the Borrower in connection with this Agreement is untrue or incorrect in any material respect when made or deliver; provided, however, that it is agreed and understood by the Agent and Lenders that all projections concerning the Borrower that have been delivered to Agent and Lenders have been prepared in good faith based upon assumptions believed by the Borrower to be reasonable at the time of the preparation thereof.

18. A series of amendments to the Forbearance Agreement were entered between LaSalle and Blackhawk, culminating in a Fourth Amendment to Forbearance Agreement and Sixth Amendment to Loan and Security Agreement dated as of August 1, 2007 ("Fourth

4

Amended Forbearance Agreement"), a true and correct copy of which is attached hereto as Exhibit "D."

19. The Fourth Amended Forbearance Agreement expanded the definition of "Current Defaults" to include all "Prior Defaults" and "Additional Defaults" (as those terms are defined therein.).

20. The Fourth Amended Forbearance Agreement did not alter, amend or change the Forbearance Events of Default.

**Events of Default**.

21. On October 22, 2007, Blackhawk filed a voluntary petition relief under Chapter 11 in the United States Bankruptcy Court for the Northern District of Ohio. As of October 19, 2007, Blackhawk owed LaSalle $34,179,405.30, exclusive of interest, fees, costs and indemnities.

22. Certain Forbearance Events of Default exist, including, without limitation, (i) Blackhawk's bankruptcy filing, (ii) the occurrence of additional events of default under the Loan Agreement that are not "Current Defaults," and (iii) Blackhawk's failure to observe or perform numerous terms, covenants and agreements contained in the Forbearance Agreement (as amended).

23. The existence of a Forbearance Event of Default triggered Key's obligation to pay the Guaranteed Obligations to LaSalle.

24. On October 22, 2007, LaSalle notified Key that (i) the Forbearance Agreement (as amended) was terminated, and (ii) the payment of the Guaranteed Obligations was immediately due and owing. (A true and correct copy of LaSalle's demand is attached hereto as Exhibit "E.")

25. Key has failed and refused to satisfy its obligation to pay LaSalle the Guaranteed Obligations.

26. Exclusive of interest presently accumulating, fees and costs the Guaranteed Obligations owed by Key to LaSalle equals $4,500,000.

## Count I - Breach of Contract

27. LaSalle restates and realleges Paragraphs 1 through 26 as and for this Paragraph 27.

28. The Guaranty is a valid and enforceable contract that is binding on Key.

29. LaSalle has performed all of its obligations under the Guaranty.

30. Certain Forbearance Events of Default have occurred which have triggered Key's obligation to make full and prompt payment of the Guaranteed Obligations.

31. All conditions precedent to LaSalle bringing this cause have been performed or have occurred.

32. On October 22, 2007, LaSalle demanded that Key immediately pay the Guaranteed Obligations, in excess of $4,500,000, as required under the terms of the Guaranty.

33. Despite demand, Key has failed and refused to pay LaSalle the Guaranteed Obligations.

34. Key has breached the Guaranty by failing and refusing to pay the Guaranteed Obligations.

35. As a direct, foreseeable and proximate result of Key's breach of the Guaranty, LaSalle has suffered damages in an amount in excess of $4,500,000.

**WHEREFORE**, LaSalle Business Credit, LLC prays for the following relief in its favor and against Key Equity Capital Corporation:

    (a)    compensatory damages in the amount of $4,500,000;

CHICAGO/#1711259.3

(b) award of all interest accruing from October 22, 2007 to the date of payment;

(c) award of all reasonable out-of-pocket expenses, including reasonable attorneys' fees and costs, incurred by LaSalle and the lenders related to this action; and

(d) such other and further relief the Court deems just and equitable.

Respectfully submitted,

LASALLE BUSINESS CREDIT, LLC

By: s/ Jeffery M. Heftman
One of Its Attorneys

Michael M. Eidelman
Randall M. Lending
Jeffery M. Heftman
Vedder, Price, Kaufman & Kammholz, P.C.
222 North LaSalle Street
Suite 2600
Chicago, IL  60601-1003
(312) 609-7500

Dated: November 13, 2007