07 C 6438

JUDGE PALLMEYER
MAGISTRATE JUDGE BROWN

# EXHIBIT A

<u>AMENDED AND RESTATED LIMITED GUARANTY AGREEMENT</u>

This AMENDED AND RESTATED LIMITED GUARANTY AGREEMENT (this "<u>Guaranty Agreement</u>") is made as of the 1st day of August, 2007, by KEY EQUITY CAPITAL CORPORATION, an Ohio corporation (together with its successors and assigns, the "<u>Guarantor</u>"), in favor of LASALLE BUSINESS CREDIT, LLC, a Delaware limited liability company (the "<u>Agent</u>"), as Agent for certain lenders (the "<u>Lenders</u>") party to the Loan Agreement (as defined below).

RECITALS

WHEREAS, Blackhawk Automotive Plastics, Inc., a Delaware corporation (the "<u>Borrower</u>"), Agent and the Lenders entered into that certain Loan and Security Agreement dated as of October 4, 2006 (as amended, supplemented or otherwise modified from time to time, the "<u>Loan Agreement</u>");

WHEREAS, Lenders have, from time to time, agreed to make certain temporary over advances available to the Borrower under the Revolving Loan Commitment (collectively, the "<u>Over Advance</u>");

WHEREAS, the Borrower previously requested that the Lenders amend the Loan Agreement to provide for a temporary increase to the Maximum Revolving Loan Limit (as defined in the Loan Agreement) from $36,000,000 to $38,000,000 and an increase in the amount of Term Loan A (as defined in the Loan Agreement) subject to, among other items, Guarantor's execution of that certain Guaranty Agreement dated as of June 28, 2007 (the "June Guaranty");

WHEREAS, the Guarantor previously executed that certain Limited Guaranty Agreement dated as of January 29, 2007, in favor of Agent, as amended and reaffirmed from time to time (the "January Guaranty", and collectively with the June Guaranty, the "Prior Guaranties");

WHEREAS, certain Events of Default (the "Current Defaults") have occurred under the Loan Agreement, and as a result thereof Lenders have, *inter alia*, the right to take one or more actions set forth in Section 16 of the Loan Agreement;

WHEREAS, pursuant to the terms of that certain Fourth Amendment to Forbearance Agreement and Sixth Amendment to Loan and Security Agreement (the "Amendment"), the Lenders agreed to temporarily forbear from enforcing their rights, powers and remedies under the Loan Documents with respect to the Current Defaults;

WHEREAS, the Guarantor is an equity holder of the Borrower and will benefit from the Over Advance and other financial accommodations made available to the Borrower pursuant to the Loan Agreement, as amended by the Amendment;

WHEREAS, the Guarantor desires to enter into this Guaranty Agreement in order to amend and restate in their entirety each of the Prior Guaranties; and

WHEREAS, it is a condition precedent to the Agent and the Lenders entering into the Amendment that the Guarantor shall have executed and delivered this Guaranty Agreement.

CHICAGO/#1687085.3

NOW, THEREFORE, in consideration of these premises and in order to induce the Agent and the Lenders to make loans and other financial accommodations available to the Borrower pursuant to the Loan Agreement, as amended by the Amendment, the Guarantor hereby agrees with the Agent and the Lenders as follows:

SECTION 1. <u>Definitions</u>. The capitalized terms used herein which are defined in the Loan Agreement and not otherwise defined herein are used herein as therein defined or referred to therein.

SECTION 2. <u>Guaranty</u>. The Guarantor hereby irrevocably and unconditionally guarantees, until this Guaranty Agreement is terminated pursuant to <u>Section 13(i)</u>, (i) the full and prompt payment and collection of the entire amount of the Over Advance, in an aggregate amount not to exceed $2,000,000 at any time, <u>plus</u> (ii) the full and prompt payment and collection when due of all Liabilities of the Borrower, provided, however, Guarantor's maximum liability under this clause (ii) (and no other clause of this Guaranty Agreement) will not exceed $2,500,000 at any time, <u>plus</u> (iii) any and all reasonable out-of-pocket expenses (including reasonable out-of-pocket counsel fees and expenses) incurred by the Agent and the Lenders in enforcing any rights under this Guaranty Agreement and all interest accruing in connection therewith after demand for payment is made under this Guaranty Agreement (all such obligations being referred to herein as of the "<u>Guaranteed Obligations</u>"). The Guarantor also acknowledges and agrees that the Agent, on behalf of the Lenders, may demand payment from the Guarantor of any portion of the Guaranteed Obligations without limiting or restricting in any way the Lenders' ability to demand future payments under this Guaranty Agreement for the remaining Guaranteed Obligations. Notwithstanding the foregoing, the Guarantor shall not be required to make any payment of the Guaranteed Obligations hereunder until the earlier to occur of (x) March 31, 2008 and (y) the occurrence of a Forbearance Event of Default (as defined in that certain Forbearance Agreement and Amendment to Loan Agreement and Letter Agreement effective as of March 28, 2007 among Borrower, Agent and Lenders, as amended, restated, modified or substituted from time to time).

SECTION 3. <u>Guaranty Absolute</u>. (a) The Guarantor guarantees that the Guaranteed Obligations with respect to the Over Advance will be paid strictly in accordance with the terms of the Amendment and the remaining Guaranteed Obligations will be paid on demand, regardless of any law, regulation or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of the Agent and the Lenders with respect thereto. The liability of the Guarantor under this Guaranty Agreement shall be absolute and unconditional irrespective of:

(i)  any lack of validity or enforceability of the Loan Agreement or any other agreement or instrument relating thereto;

(ii) any change in the time, manner or place of payment of, or in any other term of, all or any of the Guaranteed Obligations, or any other amendment or waiver of or any consent to departure from the Loan Agreement, the Amendment or any other agreement or instrument relating thereto;

(iii) any release or amendment or waiver of or consent to departure from any other guaranty for all or any of the Guaranteed Obligations;

(iv) the Lenders' election in any proceeding instituted under Chapter 11 of Title 11 of the United States Code (11 U.S.C. §101 et seq.) (the "Bankruptcy Code"), or the application of Section 1111(b)(2) of the Bankruptcy Code;

(v) any borrowing or grant of a security interest under Section 364 of the Bankruptcy Code;

(vi) any other circumstance that might otherwise constitute a defense available to, or a discharge of, the Borrower or any guarantor (other than payment in full of the Guaranteed Obligations); or

(vii) any demand by Agent for or payment made by Guarantor under any other guaranty executed by Guarantor in favor of Agent or any Lender.

The obligations of the Guarantor hereunder are independent of the obligations of any other guarantor or guaranty executed by Guarantor for any part of the Guaranteed Obligations or any of the Liabilities and a separate action or actions may be brought and prosecuted against the Guarantor whether or not action is first brought against the Borrower or any other guarantor for any part of the Guaranteed Obligations and whether or not the Borrower or such other guarantor be joined in any such action or actions. This Guaranty Agreement is a guaranty by the Guarantor of payment and not of collection. This Guaranty Agreement amends and restates in its entirety each of the Prior Guaranties.

(b) Notwithstanding the foregoing Section 3(a), by accepting this Guaranty Agreement, the Agent and the Lenders hereby agree that the Guarantor shall have the right to purchase the Loans from the Lenders for a purchase price equal to the outstanding principal and interest arising with respect to the Loans, plus all other Liabilities due, as determined by Agent in its reasonable discretion (after consultations with all Lenders); provided that if Agent or Lenders make a demand for payment under this Guaranty, Guarantor must exercise its right to purchase the Loans in full in cash from Lenders within 5 business days of Guarantor's receipt of such demand or the purchase right granted under this paragraph will terminate. Except as otherwise required by Section 7, if such purchase is consummated, the Guaranteed Obligations shall be terminated and this Guaranty Agreement shall be deemed to be of no further force or effect.

SECTION 4. Waiver. The Guarantor (a) waives, to the extent permitted by law, presentment, demand, notice of demand, protest, notice of protest and notice of dishonor and any other notice required to be given by law in connection with the delivery, acceptance, performance, default or enforcement of this Guaranty Agreement, of any endorsement of this Guaranty Agreement and (b) consents to any and all delays, extensions, renewals or other modifications of this Guaranty Agreement or waivers of any term hereof or release or discharge by the Agent or Lenders of the Borrower or the failure to act on the part of the Agent or Lenders or any indulgence shown by the Agent or Lenders, from time to time and in one or more instances (without notice to or further assent from the Guarantor), and agrees that no such action, failure to act or failure to exercise any right or remedy on the part of the Agent or any Lender shall in any way affect or impair the obligations of the Guarantor or be construed as a waiver by the Agent or any Lender of, or otherwise affect, any of the Agent's or any Lender's rights under this Guaranty Agreement or under the Loan Agreement or the Amendment.

3

SECTION 5. <u>Subrogation</u>. Until all Guaranteed Obligations have been paid in full and the Loan Agreement has been terminated, the Guarantor shall have no right of subrogation, reimbursement or contribution and hereby agrees not to enforce any remedy which Agent or any Lender now has or may hereafter have against the Borrower, any endorser or any other guarantor, of all or any part of the Guaranteed Obligations. The Guarantor also agrees not to enforce any setoffs and counterclaims and all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, and notices of acceptance of this Guaranty Agreement. The Guarantor further waives, to the extent permitted by law, all notices of the existence, creation or incurring of new or additional indebtedness, arising either from additional loans extended to the Borrower or otherwise, and also waives, to the extent permitted by law, all notices that the principal amount, or any portion thereof, and/or any interest on any instrument or document evidencing all or any part of the Guaranteed Obligations is due, notices of any and all proceedings to collect from the maker, any endorser or any other guarantor of all or any part of the Guaranteed Obligations, or from anyone else.

SECTION 6. <u>Financial Condition of the Borrower</u>. The Guarantor hereby assumes responsibility for keeping itself informed of the financial condition of the Borrower and circumstances bearing upon the risk of nonpayment of the Guaranteed Obligations or any part thereof that diligent inquiry would reveal and the Guarantor hereby agrees that neither Agent nor any Lender shall have any duty to advise the Guarantor of information known to Agent or any Lender regarding such condition or any such circumstances. In the event the Agent or any Lender, in its sole discretion, undertakes at any time or from time to time to provide any such information to the Guarantor, such Agent or Lender shall not be under any obligation (i) to undertake any investigation not a part of its regular business routine, (ii) to disclose any information which, pursuant to accepted or reasonable commercial finance practices, the Agent or any Lender wishes to maintain confidential or (iii) to make any other or future disclosures of such information or any other information to the Guarantor.

SECTION 7. <u>Reinstatement</u>. The Guarantor further agrees that, to the extent that the Borrower makes a payment or payments to Agent or any Lender, which payment or payments or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to the Borrower, its estate, trustee, receiver or any other party, including, without limitation, the Guarantor, under any bankruptcy law, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, the Guaranteed Obligations or part thereof which has been paid, reduced or satisfied by such amount shall be reinstated and continued in full force and effect as of the date such initial payment, reduction or satisfaction occurred.

SECTION 8. <u>Representations and Warranties; Incumbency</u>. The Guarantor hereby represents and warrants that: (i) the execution, delivery and performance of this Guaranty Agreement by the Guarantor has been duly authorized by all necessary corporate action and does not and will not violate the provisions of, or constitute a default under, any presently applicable law or its organizational documents, (ii) this Guaranty Agreement has been duly executed and delivered by the authorized officers of the Guarantor and constitutes its lawful, binding and legally enforceable obligation (subject to any applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether enforcement is sought by proceedings in equity or at law))

and (iii) Guarantor is solvent and has and will have the financial ability to satisfy its obligations under this Guaranty Agreement upon any demand for payment hereunder.

SECTION 9. <u>Authorization</u>. The Guarantor hereby authorizes Agent and each Lender, without notice or demand and without affecting the liability of the Guarantor hereunder, from time to time, to (i) renew, extend, accelerate or otherwise change the time for payment of, or other terms relating to, the Guaranteed Obligations, or otherwise modify, amend or change (but only in accordance with the terms thereof) the Loan Agreement, (ii) accept partial payments on the Guaranteed Obligations, (iii) take and hold security or collateral for the payment of this Guaranty Agreement, any other guarantees of the Guaranteed Obligations or other liabilities of the Borrower and the Guaranteed Obligations guaranteed hereby or thereby, and exchange, enforce, waive and release any such security or collateral, (iv) apply such security or collateral and direct the order or manner of sale thereof as in its discretion it may determine and (v) settle, release, compromise, collect or otherwise liquidate the Guaranteed Obligations and any security or collateral therefor in any manner, without affecting or impairing the obligations of the Guarantor hereunder.

SECTION 10. <u>Amendments</u>. No amendment or waiver of any provisions of this Guaranty Agreement nor consent to any departure by the Guarantor therefrom shall in any event be effective unless the same shall be in writing and signed by the Guarantor, Agent and the Lenders, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given. No release or termination of this Guaranty Agreement shall be effected unless the same shall be in writing and executed by the Guarantor, Agent and the Lenders.

SECTION 11. <u>No Waiver; Remedies</u>. The rights, options and remedies of the Agent and the Lenders shall be cumulative and no failure or delay by the Agent or the Lenders in exercising any right, option or remedy shall be deemed a waiver thereof or of any other right, option or remedy, or waiver of any default hereunder, nor shall any single or partial exercise of any such right, power or remedy preclude any other or further exercise thereof or the exercise of any other right, power or remedy hereunder. Neither the Agent nor any Lender shall be deemed to have waived any of its rights hereunder or under any other agreement, instrument or paper signed by the Borrower unless such waiver is in writing and signed by such party.

SECTION 12. <u>Right of Set-off</u>. If there shall exist any Event of Default or if the maturity of the Loans is accelerated pursuant to the terms of the Loan Agreement, the Lenders shall have the right at any time to set off against, and to appropriate and apply toward the payment of, any and all Guaranteed Obligations, whether or not the same shall then have matured, (i) any and all deposit balances and all other indebtedness then held or owing by the Lenders to or for the credit or account of the Guarantor and (ii) any monies, credits or other property belonging to the Guarantor at any time held or coming into the possession of the Lenders, all without notice to or demand upon the Guarantor or any other Person, all such notices and demands being hereby expressly waived by the Guarantor.

SECTION 13. <u>Continuing Guaranty; Transfer of Advances</u>. This Guaranty Agreement is a continuing guaranty and shall (i) unless otherwise agreed in writing by Agent and the Lenders, remain in full force and effect until the Guaranteed Obligations (other than contingent obligations or indemnification obligations not yet matured or accrued) are paid in full, (ii) be

5

binding upon the Guarantor, its successors and assigns (the Guarantor shall not be permitted to assign any Guaranteed Obligations without the prior written consent of the Agent) and (iii) inure to the benefit of and be enforceable by the Agent and the Lenders and their successors, transferees and assigns.

SECTION 14. <u>Addresses for Notices</u>.  All notices, requests and demands to or upon the parties to this Guaranty Agreement shall be in writing and shall be deemed to have been given or made when delivered by hand on a Business Day, or five (5) Business Days after the date when deposited in the mail, postage prepaid by registered or certified mail, return receipt requested, or when sent by overnight courier, on the Business Day next following the day on which the notice is delivered to such overnight courier, addressed as follows:

        The Guarantor:        Key Equity Capital Corporation
                                      127 Public Square, Suite 5100
                                      Cleveland, Ohio 44114-1312
                                              Attention: John Kirby / Sean Ward
                                              Facsimile: (216) 535- 4700

        The Agent:             LaSalle Business Credit, LLC
                                        2600 West Big Beaver
                                        Mail Code: M0900-345
                                        Troy, Michigan  48084
                                        Attention:  Greg Gentry
                                        Facsimile: (248) 822-5809

SECTION 15. <u>Governing Law; Jurisdiction and Venue; Service of Process</u>.  The Guarantor acknowledges and agrees that this Guaranty Agreement shall be governed by the laws of the State of Illinois, as if this Guaranty Agreement had been executed, delivered, administered and performed solely within the State of Illinois even though for the convenience and at the request of the Guarantor, this Guaranty Agreement may be executed in any other state.  The Guarantor irrevocably submits to the non-exclusive jurisdiction of any state or federal court sitting in the State of Illinois over any suit, action or proceeding arising out of or relating to this Guaranty Agreement or any other document or agreement related thereto.  The Guarantor irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum.  Final judgment in any such suit, action or proceeding brought in any such court shall be conclusive and binding upon the Guarantor and may be enforced in any court in which the Guarantor is subject to jurisdiction, by a suit upon such judgment, provided that service of process is effected upon the Guarantor in one of the manners specified in this Section or as otherwise permitted by applicable laws.  Each of the Guarantor, Agent and Lenders hereby consent to process being served in any suit, action or proceeding of the nature referred to in this Section by (a) the mailing of a copy thereof by registered or certified mail, postage prepaid, return receipt requested, to the Guarantor, Agent or the Lender, as applicable, at the applicable address designated in or pursuant to Section 14, and (b) serving a copy thereof upon the agent, if any, designated and appointed by the Guarantor, Agent or the Lenders, as applicable, as the Guarantor's, Agent's or the Lenders', as applicable, agent for

CHICAGO/#1687085.3

service of process by or pursuant to this Section. The Guarantor, Agent and the Lenders irrevocably agree that such service (y) shall be deemed in every respect effective service of process upon the Guarantor, Agent or the Lenders, as applicable, in any such suit, action or proceeding, and (z) shall, to the fullest extent permitted by law, be taken and held to be valid personal service upon the Guarantor. Nothing in this Section shall affect the right of the Agent or any Lender to serve process in any manner otherwise permitted by law or limit the right of the Agent, any Lender or the Guarantor, as applicable, otherwise to bring proceedings against the Guarantor, Agent, or any Lender, as applicable, in the courts of any jurisdiction or jurisdictions.

SECTION 16. <u>MUTUAL WAIVER OF JURY TRIAL</u>. AFTER HAVING THE OPPORTUNITY TO CONSULT COUNSEL, THE GUARANTOR, AGENT AND EACH LENDER HEREBY EXPRESSLY WAIVE THE RIGHT TO TRIAL BY JURY IN ANY LAWSUIT OR PROCEEDING RELATING TO THIS GUARANTY AGREEMENT OR ARISING IN ANY WAY FROM THE GUARANTEED OBLIGATIONS.

SECTION 17. <u>Severability</u>. Any provision of this Guaranty Agreement which is prohibited and unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

SECTION 18. <u>Limitation of Liability</u>. No claim may be made by the Guarantor against Agent, any Lender, or the Affiliates, directors, officers, employees, attorneys or agents of Agent or any Lender for any special, consequential or punitive damages in respect of any claim for breach of contract or any other theory of liability arising out of or related to the transactions contemplated by this Guaranty Agreement, or any act, omission or event occurring in connection therewith; and the Guarantor hereby waives, releases and agrees not to sue upon any such claim for any such damages, whether or not accrued and whether or not known or suspected to exist in its favor.

SECTION 19. <u>Repayment of Obligations</u>. Guarantor acknowledges that as between the Over Advance guaranteed hereunder and any other obligations of Borrower to Lenders, the Over Advance will be repaid only after all other obligations of Borrower to Lenders are fully and finally paid.

**[SIGNATURE PAGE FOLLOWS]**

*Amended and Restated Limited Guaranty Agreement Signature Page*

IN WITNESS WHEREOF, the undersigned Guarantor has caused this Amended and Restated Limited Guaranty Agreement to be duly executed and delivered by its officer thereunto duly authorized as of the date first above written.

KEY EQUITY CAPITAL CORPORATION

By:_____
Name:_____
Title:_____

Accepted and agreed

LASALLE BUSINESS CREDIT, LLC, as Agent

By:_____
Name:_____
Title: _____

CHICAGO/#1687085.3

*Amended and Restated Limited Guaranty Agreement Signature Page*

IN WITNESS WHEREOF, the undersigned Guarantor has caused this Amended and Restated Limited Guaranty Agreement to be duly executed and delivered by its officer thereunto duly authorized as of the date first above written.

KEY EQUITY CAPITAL CORPORATION

By: /s/ J.F.K.
Name: John F. Kirby
Title: Authorized Signer

Accepted and agreed

LASALLE BUSINESS CREDIT, LLC, as Agent

By: _____
Name: _____
Title: _____

CHICAGO/#1687085.3

8

*Amended and Restated Limited Guaranty Agreement Signature Page*

IN WITNESS WHEREOF, the undersigned Guarantor has caused this Amended and Restated Limited Guaranty Agreement to be duly executed and delivered by its officer thereunto duly authorized as of the date first above written.

KEY EQUITY CAPITAL CORPORATION

By:_____
Name:_____
Title:_____

Accepted and agreed

LASALLE BUSINESS CREDIT, LLC, as Agent

By: *[signature]*
Name: GREG GENTRY
Title: FIRST VICE PRESIDENT