B. <u>Borrower</u>:

Kirkland & Ellis LLP ("KE")
200 East Randolph Street
Chicago, IL 60601

Attn: Christopher Butler
(312) 861-2298 (Telephone)
(312) 861-2200 (Facsimile)
E-Mail Address: cbutler@kirkland.com

Attn: Richard Radney
(312) 861-3230 (Telephone)
(312) 861-2200 (Facsimile)
E-Mail Address: rradnay@kirkland.com

Attn: Patricia Betterly
(212) 446-4804 (Telephone)
(212) 446-4900 (Facsimile)
E-Mail Address: pbetterly@kirkland.com

Terms used herein that are not otherwise defined have the meaning ascribed to such terms in the Loan Agreement referenced below.

III.  OPERATIVE DOCUMENTS

|   |   |   | Responsibility |
|---|---|---|---|
| A. | LOAN AGREEMENT AND ANCILLARY AGREEMENTS | | |
| | 1. | Loan and Security Agreement ("Loan Agreement") | VP |
| | | a. Exhibits | |
| | | (i) Exhibit A - Business and Collateral Locations<br>(ii) Exhibit B - Compliance Certificate<br>(iii) Exhibit C - Commercial Tort Claims<br>(iv) Exhibit D - Form of Assignment and Acceptance Agreement | |
| | | b. Schedules | |
| | | (i) Schedule 1 - Permitted Liens<br>(ii) Schedule 11 (c) - Loans<br>(iii) Schedule 11 (g) - Litigation<br>(iv) Schedule 11 (i) - Affiliate Transactions<br>(v) Schedule 11(j) - Names<br>(vi) Schedule 11 (n) - Indebtedness<br>(vii) Schedule 11 (p) - Parent, Subsidiaries and Affiliates<br>(viii) Schedule 14(f) - Investments<br>(ix) Schedule 17(a) - Closing Document Checklist | |
| | 2. | Revolving Notes in favor of: | VP |
| | | a. LaSalle Business Credit, LLC ($15,000,000) | |
| | | b. Citizens Banking Corp. ($15,000,000) | |
| | 3. | Term Loan A Notes in favor of: | VP |
| | | a. LaSalle Business Credit, LLC ($5,000,000) | |
| | | b. Citizens Banking Corp. ($5,000,000) | |
| | 4. | Term Loan B Notes in favor of: | |
| | | a. LaSalle Business Credit, LLC ($750,000) | |
| | | b. Citizens Banking Corp. ($750,000) | |

3

CHICAGO/#1462240.9

| | | | Responsibility |
|---|---|---|---|
| | 5. | Trademark Security Agreement, together with Schedules thereto | VP |
| | 6. | Patent Security Agreement, together with Schedules thereto | VP |
| | 7. | Guaranty of Tier e Automotive Group, Inc. ("Parent") | VP |
| | 8. | Pledge Agreement from Parent with respect to all outstanding capital stock of Borrower, together with Schedules thereto and: | VP |
| | | a.  Stock Powers | VP |
| | | b.  Stock Certificate | Borrower |
| | 9. | Limited Guaranty of Key Equity Capital Corp. ("Key" and together with "Parent", the "Guarantors") | VP |
| | 10. | Certificate of Officer of Borrower attesting to true and complete copies of sale-leaseback documents, in form and substance reasonably acceptable to Agent and Lenders | Borrower |
| | 11. | Officer's Certificate of the Borrower certifying to the following: | Borrower (form provided by VP) |
| | | a.  Accuracy of Representations and Warranties | |
| | | b.  No Event Default or Unmatured Event of Default | |
| | | c.  Such other matters as Agent reasonably requests. | |
| | 12. | Solvency Certificate together with: | Borrower (form provided by VP) |
| | | a.  Pro Forma Balance Sheets for Borrower on a consolidated and consolidating basis giving effect to financings; and | |
| | | b.  Projections for Borrower on a consolidated and consolidating bases | |
| | 13. | Opinion of Borrower's and Guarantors' Counsel | KE |
| B. | | **REAL ESTATE DOCUMENTS** | |
| | 14. | Mortgage/Deed of Trust for the parcel of real property described on <u>Schedule A</u> hereto (the "Mortgaged Property") | VP |

4

CHICAGO/#1462240.9

|  |  |  | Responsibility |
|---|---|---|---|
|  | 15. | Landlord Waivers for the parcels of real property described on Schedule B hereto | Borrower (form provided by VP) |
|  | 16. | Bailee Agreements for all bailee/warehouse locations where inventory of Borrower is located | [Requirement waived by Agent] |
|  | 17. | Environmental Indemnity Agreement with respect to the Mortgaged Property | VP |
|  | 18. | Environmental Assessment satisfactory to Agent | Agent |
|  | 19. | An ALTA Loan Title Insurance Policy, issued by an insurer acceptable to the Agent, insuring the Agent's lien on the Mortgaged Property and containing such endorsements as the Agent may reasonably require | Borrower |
|  | 20. | Copies of all documents of record concerning the Mortgaged Property as shown on the commitment for each ALTA Loan Title Insurance Policy referred to above | Borrower |
|  | 21. | A flood certification for the Mortgaged Property | Borrower |
|  | 22. | If required pursuant to the applicable flood certification, flood insurance policy for the Mortgaged Property N/A | Borrower |
|  | 23. | ALTA Survey for the Mortgaged Property | Borrower |
|  | 24. | An Appraisal and Appraisal Report for the Mortgaged Property satisfactory to Agent | Borrower |
| C. |  | **UCC SEARCHES AND FILINGS** |  |
|  | 25. | UCC, Tax Lien, Judgment and Pending Litigation Searches for Borrower in the following jurisdictions: | VP |
|  |  | a.  Delaware<br>b.  Ohio<br>c.  Columbiana County, Ohio<br>d.  Wyandot County, Ohio<br>e.  Warren County, Ohio<br>f.  Mahoning County, Ohio<br>g.  Michigan<br>h.  Oakland County, Michigan |  |

| | | | Responsibility |
|---|---|---|---|
| | 26. | UCC Fixture Financing Statements with respect to the Mortgaged Property to be filed in the counties described on Schedule A hereto | VP |
| | 27. | Pre-filing authorization for UCC-1 Financing Statement for Borrower to be filed with the Delaware Secretary of State | VP |
| | 28. | UCC-1 Financing Statement for Borrower to be filed with the Delaware Secretary of State | VP |
| | 29. | UCC Financing Statement for each Guarantor with respect to Stock Pledge | VP |
| D. | | **ITEMS RELATING TO INSURANCE** | |
| | 30. | Certificate(s) of Insurance for Borrower (and covering the Mortgaged Property) together with copies of all insurance policies | Borrower |
| | 31. | Lenders' loss payable clause for all property and casualty insurance showing LaSalle Business Credit, LLC, as Agent, as lender's loss payee, together with sole loss payee letter to Agent | Borrower (form provided by VP) |
| | 32. | Assignment of Business Interruption Insurance Policy | Borrower |
| E. | | **AUTHORIZING DOCUMENTS** | |
| | 33. | Secretary's Certificate for Borrower attaching and certifying as to (i) Certificate of Incorporation, certified by the Delaware Secretary of State as of a recent date, (ii) By-Laws, (iii) Authorizing Resolutions and (iv) Incumbency of Officers | Borrower (form provided by VP) |
| | 34. | Good Standing Certificate (or equivalent) for Borrower from each of the following jurisdictions: | Borrower |
| | | a. Delaware | |
| | | b. Ohio | |
| | | c. Michigan | |
| | 35. | Good Standing Certificate of Parent from Delaware Secretary of State | Borrower |

CHICAGO/#1462240.9

|   |   |   |   | Responsibility |
|---|---|---|---|---|
|   |   | 36. | Secretary's Certificate for Parent attaching and certifying as to (i) Certificate of Incorporation, certified by the Delaware Secretary of State as of a recent date, (ii) By-Laws, (iii) Authorizing Resolutions and (iv) Incumbency of Officers | Borrower |
|   | F. | CASH MANAGEMENT; LOAN MANAGEMENT; LETTER OF CREDIT DOCUMENTS | | |
|   |   | 37. | Deposit Account Control Agreements with each of the banks set forth on Schedule C hereto with respect to each deposit account | Borrower (form provided by VP) |
|   |   | 38. | Controlled Disbursement Services Agreement | VP |
|   |   | 39. | Form of Daily Loan Request Form | VP |
|   |   | 40. | Wire Transfer Security Procedures – Telephone | VP |
|   |   | 41. | Waiver Agreement | VP |
|   |   | 42. | LaSalle Lock Box and Blocked Account Agreement (with respect to tri-party agreement among Borrower, Agent and LaSalle Bank National Association) | VP |
|   |   | 43. | Collateral Report Authorization Letter | VP |
|   |   | 44. | Master Letter of Credit Agreement | VP |
|   | G. | PAYOFF AND DISBURSEMENT DOCUMENTS | | |
|   |   | 45. | Authorization to Disburse Loan Proceeds | Borrower (form provided by VP) |
|   |   | 46. | Payoff letter from LaSalle Bank, N.A. regarding satisfaction of existing credit facility | Borrower |
|   |   | 47. | UCC Termination Statements pertaining to satisfaction of existing credit facility with LaSalle Bank, N.A., for the following jurisdiction(s):<br>a.   Delaware<br>[Others TBD] | Borrower |
|   | H. | OTHER | | |
|   |   | 48. | Accountant's Reliance Letter | VP |
|   |   | 49. | Sarbanes Oxley Approval Memorandum | VP/Agent |

7

CHICAGO/#1462240.9

|   |   | Responsibility |
|---|---|---|
| 50. | Post-Closing Agreement (if applicable) | VP |
| 51. | Fee Side Letter | VP |
| 52. | Appraisal Reliance Letter | Agent |

## SCHEDULE A

## MORTGAGED PROPERTY

1. 500 N. Warpole Street
   Upper Sandusky, OH 43351
   County: Wyandot

## SCHEDULE B

## LOCATIONS OF LEASED REAL PROPERTY

| Location | Lessor |
|---|---|
| 300 Benton Road<br>Salem, OH | Penny Lippiatt |
| 3900 South State Route 741<br>Lebanon, OH 45036 | K.P. Properties of Ohio LLC<br>8340 Carolines Trail<br>Cincinnati, OH 45242 |
| 800 Pennsylvania Avenue<br>Salem, OH 44460<br>County: Columbiana | Stag Capital Partners |
| 4219 Route 42<br>Mason, OH 45040<br>County: Warren | Stag Capital Partners |
| 960 Deneen Ave.<br>Monroe, OH 45050 | K.P. Properties of Ohio LLC<br>8340 Carolines Trail<br>Cincinnati, OH 45242 |
| 101 S. 15th Street<br>Sebring, OH | Zee Tech Warehousing, Inc.<br>101 S. 15th St.<br>Sebring, OH 44672 |
| 1111 W. Long Lake Road<br>Troy, MI<br>[WAIVED BY LASALLE - - SALES OFFICE] | N/A |

CHICAGO/#1462240.9

SCHEDULE C

BANK ACCOUNTS

| Bank | Account Number | Type of Account | Type of Account Agreement |
|---|---|---|---|
| Bank One | 629436544 | | |
| | 629436536 | | |
| LaSalle Bank | 5800339623 | | |
| | 5590055777 | | |
| | 5800339631 | | |
| | 5590090261 | | |
| | 5590091889 | | |

11

promissory note or notes to the order of the assignee in amounts equal to such assignee's commitments and outstanding Loans hereunder and, if the assigning Lender has retained a portion of the Loans, a new promissory note or notes to the order of the assigning Lender in an amount equal to the remaining commitments and outstanding loans hereunder of such assigning Lender under the terms of this Agreement. Such new promissory note or notes shall re-evidence the indebtedness outstanding under the old promissory note or notes and shall be in the aggregate principal amount of such surrendered promissory note or notes, shall be dated of even date herewith and shall otherwise be in substantially the form of the promissory note or notes subject to such assignment.

(g) Each Lender may sell participations (without the consent of Agent, Borrower or any other Lender) to one or more parties, in or to all (or a portion) of its rights and obligations under this Agreement (including, without limitation, all or a portion of its Revolving Loan Commitment, Term Loan A Commitment and Term Loan B Commitment or the Loans owing to it); provided, that (i) such Lender's obligations under this Agreement shall remain unchanged, (ii) such Lender shall remain solely responsible to the other parties hereto for the performance of such obligations, (iii) Borrower, Agent, and the other Lenders shall continue to deal solely and directly with such Lender in connection with such Lender's rights and obligations under this Agreement and (iv) such Lender shall not transfer, grant, assign or sell any participation under which the participant shall have rights to approve any amendment or waiver of this Agreement.

(h) Each Lender agrees that, without the prior written consent of Borrower and Agent, it will not make any assignment hereunder in any manner or under any circumstances that would require registration or qualification of, or filings in respect of, any Loan or other Liabilities under the securities laws of the United States of America or of any jurisdiction.

(i) In connection with the efforts of any Lender to assign its rights or obligations or to participate interests, such Lender may disclose any information in its possession regarding Borrower.

21. Amendments, Etc.

No amendment or waiver of any provision of this Agreement or any of the Other Agreements, nor consent to any departure by any Obligor therefrom, shall in any event be effective unless the same shall be in writing and signed by Requisite Lenders, or if Lenders shall not be parties thereto, by the parties thereto and consented to by Requisite Lenders, and each such amendment, waiver or consent shall be effective only in the specific instance and for the specific purpose for which given; provided, that no amendment, waiver or consent shall, unless in writing and signed by all Lenders, do any of the following: (i) increase the Revolving Loan Commitment, Term Loan A Commitment and Term Loan B Commitment of Lenders or subject Lenders to any additional obligations to extend credit to Borrower, (ii) reduce the principal of, or interest on, the Loans (other than as expressly permitted herein) or any fees hereunder, (iii) postpone any date fixed for any payment in respect of principal of, or interest on, the Loan or any fees hereunder, (iv) change the Pro Rata Shares of Lenders, or any minimum requirement necessary for Lenders or Requisite Lenders to take any action hereunder, (v) amend or waive this Section 21, or change the definition of Requisite Lenders, (vi) increase the advance rates set

forth in subsection 2(a) hereof, (vii) amend or waive any financial covenant set forth in Section 14 hereof, or (viii) except in connection with the financing, refinancing, sale or other disposition of any asset of Borrower permitted under this Agreement (or to the extent Requisite Lender approval only is required with any such release pursuant to subsection 19(j) hereof), release or subordinate any liens in favor of Agent, for the benefit of Agent and Lenders, on any of the Collateral and provided further, that no amendment, waiver or consent affecting the rights or duties of Agent under this Agreement or any Other Agreement shall in any event be effective, unless in writing and signed by Agent in addition to Lenders required hereinabove to take such action. Notwithstanding any of the foregoing to the contrary, (a) for purposes of voting or consenting to matters with respect to this Agreement and the Other Agreements, a Defaulting Lender shall not be considered a Lender and such Defaulting Lender's Revolving Loan Commitment, Term Loan A Commitment and Term Loan B Commitment shall each be deemed to be $0 until such Defaulting Lender makes the payments required in this Agreement and (b) the consent of Borrower shall not be required for any amendment, modification or waiver of the provisions of this Section 21.

In the event that any consent, waiver or amendment requiring the agreement of all Lenders as set forth above is agreed to by the Requisite Lenders, but not all Lenders, Agent may, in its sole discretion, cause any non-consenting Lender to assign its rights and obligations under this Agreement and the Other Agreements to one or more new Lenders or existing Lenders in the manner and according to the terms set forth in Section 20 of this Agreement; provided, that (i) no Lender may be required to assign its rights and obligations to a new Lender because such existing Lender is unwilling to increase its own loan commitments, (ii) such new Lender must be willing to consent to the proposed amendment, waiver or consent and (iii) in connection with such assignment the new Lender pays the assigning Lender an amount equal to the Liabilities owing to such assigning Lender, including all principal, accrued and unpaid interest and accrued and an unpaid fees to the date of assignment. Such assignment shall occur within thirty (30) days of notice by Agent to such non-consenting Lender of Agent's intent to cause such non-consenting Lender to assign its interests hereunder.

22.   Nonliability of Agent and Lenders.

The relationship between Borrower, Agent and Lenders shall be solely that of borrower and lender. Neither Agent nor any Lender shall have any fiduciary responsibilities to Borrower. Neither Agent nor any Lender undertakes any responsibility to Borrower to review or inform Borrower of any matter in connection with any phase of Borrower's business or operations.

23.   Indemnification.

Borrower agrees to defend (with counsel satisfactory to Agent), protect, indemnify and hold harmless Agent and each Lender, each affiliate or subsidiary of Agent and each Lender, and each of their respective shareholders, members, officers, directors, managers, employees, attorneys and agents (each an "**Indemnified Party**") from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, claims, costs, expenses and disbursements of any kind or nature (including, without limitation, the disbursements and the reasonable fees of counsel for the Indemnified Parties in connection with any investigative, administrative or judicial proceeding, whether or not the Indemnified Party shall be designated a

56

party thereto), which may be imposed on, incurred by, or asserted against, any Indemnified Party (whether direct, indirect or consequential and whether based on any federal, state or local laws or regulations, including, without limitation, securities laws and regulations, Environmental Laws and commercial laws and regulations, under common law or in equity, or based on contract or otherwise) in any manner relating to or arising out of this Agreement or any Other Agreement, or any act, event or transaction related or attendant thereto, the making or issuance and the management of the Loans or any Letters of Credit or the use or intended use of the proceeds of the Loans or any Letters of Credit; provided, however, that Borrower shall not have any obligation hereunder to any Indemnified Party with respect to matters caused by or resulting from the willful misconduct or gross negligence of such Indemnified Party. To the extent that the undertaking to indemnify set forth in the preceding sentence may be unenforceable because it is violative of any law or public policy, Borrower shall satisfy such undertaking to the maximum extent permitted by applicable law. Any liability, obligation, loss, damage, penalty, cost or expense covered by this indemnity shall be paid to each Indemnified Party on demand, and, failing prompt payment, shall, together with interest thereon at the highest rate then applicable to Loans hereunder from the date incurred by each Indemnified Party until paid by Borrower, be added to the Liabilities of Borrower and be secured by the Collateral. The provisions of this Section 23 shall survive the satisfaction and payment of the other Liabilities and the termination of this Agreement.

24. Notice.

All written notices and other written communications with respect to this Agreement shall be sent by ordinary, certified or overnight mail, by telecopy or delivered in person, and in the case of Agent shall be sent to the address set forth on the signature page hereto, in the case of a Lender shall be sent to the address set forth below its name on the signature page hereto or in the Assignment and Acceptance Agreement and in the case of Borrower shall be sent to it at the address set forth on the signature page hereto or as otherwise directed by Borrower in writing. All notices shall be deemed received upon actual receipt thereof or refusal of delivery.

25. Choice of Governing Law; Construction; Forum Selection.

This Agreement and the Other Agreements are submitted by Borrower to Agent and Lenders for their acceptance or rejection at Agent's principal place of business as an offer by Borrower to borrow monies from Agent and Lenders now and from time to time hereafter, and shall not be binding upon Agent or any Lender or become effective until accepted by Agent and Lenders, in writing, at said place of business. If so accepted by Agent and Lenders, this Agreement and the Other Agreements shall be deemed to have been made at said place of business. THIS AGREEMENT AND THE OTHER AGREEMENTS SHALL BE GOVERNED AND CONTROLLED BY THE INTERNAL LAWS OF THE STATE OF ILLINOIS AS TO INTERPRETATION, ENFORCEMENT, VALIDITY, CONSTRUCTION, EFFECT, AND IN ALL OTHER RESPECTS, INCLUDING, WITHOUT LIMITATION, THE LEGALITY OF THE INTEREST RATE AND OTHER CHARGES, BUT EXCLUDING PERFECTION OF THE SECURITY INTERESTS IN COLLATERAL LOCATED OUTSIDE OF THE STATE OF ILLINOIS, WHICH SHALL BE GOVERNED AND CONTROLLED BY THE LAWS OF THE RELEVANT JURISDICTION IN WHICH SUCH COLLATERAL IS LOCATED. If any provision of

CHICAGO/#1466603.10

this Agreement shall be held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or remaining provisions of this Agreement.

To induce Agent and Lenders to accept this Agreement, Borrower irrevocably agrees that, subject to Agent's sole and absolute election, ALL ACTIONS OR PROCEEDINGS IN ANY WAY, MANNER OR RESPECT, ARISING OUT OF OR FROM OR RELATED TO THIS AGREEMENT, THE OTHER AGREEMENTS OR THE COLLATERAL SHALL BE LITIGATED IN COURTS HAVING SITUS WITHIN THE CITY OF CHICAGO, STATE OF ILLINOIS. BORROWER HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURTS LOCATED WITHIN SAID CITY AND STATE. BORROWER HEREBY WAIVES PERSONAL SERVICE OF ANY AND ALL PROCESS AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE UPON BORROWER BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, ADDRESSED TO BORROWER AT THE ADDRESS SET FORTH FOR NOTICE IN THIS AGREEMENT AND SERVICE SO MADE SHALL BE COMPLETE TEN (10) DAYS AFTER THE SAME HAS BEEN POSTED. BORROWER HEREBY WAIVES ANY RIGHT IT MAY HAVE TO TRANSFER OR CHANGE THE VENUE OF ANY LITIGATION BROUGHT AGAINST BORROWER BY AGENT OR LENDERS IN ACCORDANCE WITH THIS SECTION.

26. Headings of Subdivisions.

The headings of subdivisions in this Agreement are for convenience of reference only, and shall not govern the interpretation of any of the provisions of this Agreement.

27. Power of Attorney.

Borrower acknowledges and agrees that upon an Event of Default that has occurred and is continuing its appointment of Agent as its attorney and agent-in-fact for the purposes specified in this Agreement is an appointment coupled with an interest and shall be irrevocable until all of the Liabilities are satisfied and paid in full and this Agreement is terminated.

28. Confidentiality.

Borrower, Agent and each Lender hereby agrees to use commercially reasonable efforts to assure that any and all information relating to Borrower which is (i) furnished by Borrower to Agent or any Lender (or to any affiliate of Agent or any Lender); and (ii) non-public, confidential or proprietary in nature, shall be kept confidential by Agent and such Lender or such affiliate in accordance with applicable law; provided, however, that such information and other credit information relating to Borrower may be distributed by such party to such party's directors, officers, employees, attorneys, affiliates, assignees, participants, auditors, agents and regulators, to Agent and any other Lender and upon the order of a court or other governmental agency having jurisdiction over Agent or such Lender or such affiliate, to any other party. In addition such information and other credit information may be distributed by Agent or any Lender to potential participants or assignees of any portion of the Liabilities, provided, that such

CHICAGO/#1466603.10

potential participant or assignee agrees to follow the confidentiality requirements set forth herein. Borrower, Agent and each Lender further agree that this provision shall survive the termination of this Agreement. Notwithstanding the foregoing, Borrower hereby consents to Agent publishing a tombstone or similar advertising material relating to the financing transaction contemplated by this Agreement.

29. <u>Counterparts</u>.

This Agreement, any of the Other Agreements and any amendments, waivers, consents or supplements may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which, when so executed and delivered, shall be deemed an original, but all of which counterparts together shall constitute but one agreement.

30. <u>Electronic Submissions</u>.

Upon not less than thirty (30) days' prior written notice (the "Approved Electronic Form Notice"), Agent may permit or require that any of the documents, certificates, forms, deliveries or other communications, authorized, required or contemplated by this Agreement or the Other Agreements, be submitted to Agent in "Approved Electronic Form" (as hereafter defined), subject to any reasonable terms, conditions and requirements in the applicable Approved Electronic Forms Notice. For purposes hereof "Electronic Form" means e-mail, e-mail attachments, data submitted on web-based forms or any other communication method that delivers machine readable data or information to Agent, and "Approved Electronic Form" means an Electronic Form that has been approved in writing by Agent (which approval has not been revoked or modified by Agent) and sent to Borrower in an Approved Electronic Form Notice. Except as otherwise specifically provided in the applicable Approved Electronic Form Notice, any submissions made in an applicable Approved Electronic Form shall have the same force and effect that the same submissions would have had if they had been submitted in any other applicable form authorized, required or contemplated by this Agreement or the Other Agreements.

31. <u>Waiver of Jury Trial; Other Waivers</u>.

(a) BORROWER, AGENT AND EACH LENDER EACH HEREBY WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING WHICH PERTAINS DIRECTLY OR INDIRECTLY TO THIS AGREEMENT, ANY OF THE OTHER AGREEMENTS, THE LIABILITIES, THE COLLATERAL, ANY ALLEGED TORTIOUS CONDUCT BY BORROWER, AGENT OR SUCH LENDER OR WHICH, IN ANY WAY, DIRECTLY OR INDIRECTLY, ARISES OUT OF OR RELATES TO THE RELATIONSHIP AMONG BORROWER, AGENT AND LENDERS. IN NO EVENT SHALL AGENT OR ANY LENDER BE LIABLE FOR LOST PROFITS OR OTHER SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES.

(b) Borrower hereby waives demand, presentment, protest and notice of nonpayment, and further waives the benefit of all valuation, appraisal and exemption laws.

(c) Borrower hereby waives the benefit of any law that would otherwise restrict or limit Agent or any Lender or any affiliate of Agent or any Lender in the exercise of its

right, which is hereby acknowledged and agreed to, to set-off against the Liabilities, without notice at any time hereafter, any indebtedness, matured or unmatured, owing by Agent or any Lender or such affiliate of Agent or any Lender to Borrower, including, without limitation any Deposit Account at Agent or any Lender or such affiliate.

(d) BORROWER HEREBY WAIVES ALL RIGHTS TO NOTICE AND HEARING OF ANY KIND PRIOR TO THE EXERCISE BY LENDER OF ITS RIGHTS TO REPOSSESS THE COLLATERAL OF BORROWER WITHOUT JUDICIAL PROCESS OR TO REPLEVY, ATTACH OR LEVY UPON SUCH COLLATERAL.

(e) Agent's and/or Lenders' failure, at any time or times hereafter, to require strict performance by Borrower of any provision of this Agreement or any of the Other Agreements shall not waive, affect or diminish any right of Agent or any Lender thereafter to demand strict compliance and performance therewith. Any suspension or waiver by Agent or any Lender of an Event of Default under this Agreement or any default under any of the Other Agreements shall not suspend, waive or affect any other Event of Default under this Agreement or any other default under any of the Other Agreements, whether the same is prior or subsequent thereto and whether of the same or of a different kind or character. No delay on the part of Agent or any Lender in the exercise of any right or remedy under this Agreement or any Other Agreement shall preclude other or further exercise thereof or the exercise of any right or remedy. None of the undertakings, agreements, warranties, covenants and representations of Borrower contained in this Agreement or any of the Other Agreements and no Event of Default under this Agreement or default under any of the Other Agreements shall be deemed to have been suspended or waived by Agent and/or Lenders unless such suspension or waiver is in writing, signed by a duly authorized officer of Agent, Requisite Lenders or all Lenders, as required herein, and directed to Borrower specifying such suspension or waiver.

[Signature Page Follows]

CHICAGO/#1466603.10

*Loan and Security Agreement Signature Page*

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first written above.

        BLACKHAWK AUTOMOTIVE
        PLASTICS, INC.

By: *[signature]*
Title: President & CEO

And

By: *[signature]*
Title: CFO

Address: 800 Pennsylvania Avenue
         Salem, Ohio 44460
         Attn: President
Facsimile: (330) 332 – 6568

*Loan and Security Agreement Signature Page (continued)*

        LASALLE BUSINESS CREDIT, LLC, as
        Agent and a Lender

By: *WMJ. Stewart*
Title: FIRST VICE PRESIDENT

Address:  2600 Big Beaver
              Troy, MI 48084
Facsimile: (248) 822-5809

Revolving Loan Commitment: $15,000,000
Term Loan A Commitment: $5,000,000
Term Loan B Commitment: $750,000

*Loan and Security Agreement Signature Page (continued)*

**CITIZENS BANK**, a Michigan banking corporation

By: _____
Title: First Vice President

Address: c/o Citizens Bank Business
         Finance
         38701 Seven Mile Road
         Suite 290
         Livonia, MI 48152
         Attn: Charles D. Stephenson
         Facsimile: (248) 324-8616

Revolving Loan Commitment: $15,000,000
Term Loan A Commitment: $5,000,000
Term Loan B Commitment: $750,000

EXHIBIT A

BUSINESS AND COLLATERAL LOCATIONS

Attached to and made a part of that certain Loan and Security Agreement of even date herewith among BLACKHAWK AUTOMOTIVE PLASTICS, INC. ("Borrower") and LASALLE BUSINESS CREDIT, LLC, as Agent and all Lenders from time to time a party hereto.

A. Borrower's business locations (please indicate which location is the principal place of business and at which locations originals and all copies of Borrower's books, records and accounts are kept).

1. 800 Pennsylvania Ave., Salem, OH 44460 (Corporate office and books)

2. 500 N. Warpole Street, Upper Sandusky, OH 43351 (books)

3. 4219 Route 42, Mason, OH 45040 (books)

4. 1111 W. Long Lake Rd., Suite 102 Troy, MI 48099-1259

B. Other locations of Collateral (including, without limitation, warehouse locations, processing locations, consignment locations) and all post office boxes of Borrower. Please indicate the relationship of such location to Borrower (i.e. public warehouse, processor, etc.).

| | | | |
|---|---|---|---|
| Warehouse | 300 Benton Rd. | Salem | OH |
| Warehouse | 101 South 15th St. | Sebring | OH |
| Warehouse | 3900 St RT 741 | Lebanon | OH |
| Warehouse | 960 Deneen Ave. | Monroe | OH |
| Sequencing - Ryder Integrated Logistics | 2901 S. Canal Rd | Lansing | MI |
| Sequencing - Plastech MSC | 4240 East Rive Rd. | Moraine | OH |
| GM – Lansing Assembly Plant | Lansing Grand River Assembly Plant | Lansing | MI |
| GM - Moraine Assembly Plant | 511 Byers Rd | Miamisburg | OH |
| Processor - Plastic Platers | 9921 Clinton Rd. | Cleveland | OH |
| Processor - Polymer Exchange | 1946 Trapas Ave., P.O. Box 26345 | Akron | OH |

C. Bank Accounts of Borrower (other than those at LaSalle Bank):

| Bank (with address) | Account Number | Type of Account |
|---|---|---|
| 1. Bank One, Ohio | 629436544 | Payroll |
| 2. Bank One, Canada | 4663119-1-01 | A/P Disbursement ($CDN) |
| 3. Bank One, Canada | 4663119-2-10 | A/P Disbursement ($USD) |

A-1