# EXHIBIT B

## COMPLIANCE CERTIFICATE

Attached to and made a part of that certain Loan and Security Agreement, as it may be amended in accordance with its terms from time to time, including all exhibits attached thereto (the "Agreement") dated as of September __, 2006 among BLACKHAWK AUTOMOTIVE PLASTICS, INC. ("Borrower"), LASALLE BUSINESS CREDIT, LLC as agent ("Agent") and each lender from time to time a party thereto ("Lenders").

This Certificate is submitted pursuant to subsection 9(c) of the Agreement.

The undersigned hereby certifies to Agent and Lenders that as of the date of this Certificate:

1. The undersigned is the _____ of Borrower.

2. There exists no event or circumstance which is or which with the passage of time, the giving of notice, or both would constitute an Event of Default, as that term is defined in the Agreement, or, if such an event or circumstance exists, a writing attached hereto specifies the nature thereof, the period of existence thereof and the action that Borrower has taken or proposes to take with respect thereto.

3. No material adverse change in the condition, financial or otherwise, business, property, or results of operations of Borrower has occurred since [date of last Compliance Certificate/last financial statements delivered prior to closing], or, if such a change has occurred, a writing attached hereto specifies the nature thereof and the action that Borrower has taken or proposes to take with respect thereto.

4. Borrower is in compliance with the representations, warranties and covenants in the Agreement, or, if Borrower is not in compliance with any representations, warranties or covenants in the Agreement, a writing attached hereto specifies the nature thereof, the period of existence thereof and the action that Borrower has taken or proposes to take with respect thereto.

5. The financial statements of Borrower being concurrently delivered herewith have been prepared in accordance with generally accepted accounting principles consistently applied and there have been no material changes in accounting policies or financial reporting practices of Borrower since [date of the last Compliance Certificate/date of last financial statements delivered prior to closing] or, if any such change has occurred, such changes are set forth in a writing attached hereto.

6. Attached hereto as <u>Schedule 1</u> is a true and correct calculation of the financial covenants contained in the Agreement.

BLACKHAWK AUTOMOTIVE
PLASTICS, INC.

By:_____
Its:_____

EXHIBIT C

COMMERCIAL TORT CLAIMS

NONE

# EXHIBIT D

## FORM OF ASSIGNMENT AND ACCEPTANCE AGREEMENT

This Assignment and Acceptance Agreement (this "**Assignment Agreement**") between _____ (the Assignor) and _____ (the "**Assignee**") is dated as of _____, 200\_\_. The parties hereto agree as follows:

1. <u>Preliminary Statement</u>. The Assignor is a party to a Loan and Security Agreement (which, as it may be amended, modified, renewed or extended from time to time, is herein called the "**Loan Agreement**") described in Item 1 of <u>Schedule 1</u> attached hereto ("<u>Schedule 1</u>"). Capitalized terms used herein and not otherwise defined herein shall have the meanings attributed to them in the Loan Agreement.

2. <u>Assignment and Assumption</u>. The Assignor hereby sells and assigns to the Assignee, and the Assignee hereby purchases and assumes from the Assignor, an interest in and to the Assignor's rights and obligations under the Loan Agreement such that after giving effect to such assignment the Assignee shall have purchased pursuant to this Assignment Agreement the percentage interest specified in Item 3 of <u>Schedule 1</u> of all outstanding rights and obligations under the Loan Agreement relating to the facilities listed in Item 3 of <u>Schedule 1</u> and the Other Agreements (collectively, the "Loan Documents"). The aggregate Revolving Loan Commitment and Term Loan Commitment (each referred to hereinafter collectively as the "Commitment") (or Loans, if the applicable Commitment has been terminated) purchased by the Assignee hereunder is set forth in Item 4 of <u>Schedule 1</u>.

3. <u>Effective Date</u>. The effective date of this Assignment Agreement (the "**Effective Date**") shall be the later of the date specified in Item 5 of <u>Schedule 1</u> or two (2) Business Days (or such shorter period agreed to by the Agent) after a Notice of Assignment substantially in the form of <u>Appendix I</u> (attached hereto) has been delivered to the Agent. Such Notice of Assignment must include the consents, if any, required to be delivered to the Agent and the Borrower by Section 21(c) of the Loan Agreement. In no event will the Effective Date occur if the payments required to be made by the Assignee to the Assignor on the Effective Date under <u>Sections 4</u> and <u>5</u> hereof are not made on the proposed Effective Date. The Assignor will notify the Assignee of the proposed Effective Date no later than the Business Day prior to the proposed Effective Date. As of the Effective Date, (i) the Assignee shall have the rights and obligations of a Lender under the Loan Documents with respect to the rights and obligations assigned to the Assignee hereunder and (ii) the Assignor shall relinquish its rights and be released from its corresponding obligations under the Loan Documents with respect to the rights and obligations assigned to the Assignee hereunder.

4. <u>Payments Obligations</u>. On and after the Effective Date, the Assignee shall be entitled to receive from the Agent all payments of principal, interest and fees with respect to the interest assigned hereby. The Assignee shall advance funds directly to the Agent with respect to all Loans and reimbursement payments made on or after the Effective Date with respect to the interest assigned hereby. In consideration for the sale and assignment of Loans hereunder, (i) the Assignee shall pay the Assignor, on the Effective Date, an amount equal to the principal amount of the portion of all Prime Rate Loans assigned to the Assignee hereunder and (ii) with respect to

each LIBOR Rate Loan made by the Assignor and assigned to the Assignee hereunder which is outstanding on the Effective Date, (a) on the last day of the Interest Period therefor or (b) on such earlier date agreed to by the Assignor and the Assignee or (c) on the date on which any such LIBOR Rate Loan either becomes due (by acceleration or otherwise) or is prepaid (the date as described in the foregoing clauses (a), (b) or (c) being hereinafter referred to as the "**Payment Date**"), the Assignee shall pay the Assignor an amount equal to the principal amount of the portion of such LIBOR Rate Loan assigned to the Assignee which is outstanding on the Payment Date. If the Assignor and the Assignee agree that the Payment Date for such LIBOR Rate Loan shall be the Effective Date, they shall agree to the interest rate applicable to the portion of such Loan assigned hereunder for the period from the Effective Date to the end of the existing Interest Period applicable to such LIBOR Rate Loan (the "**Agreed Interest Rate**") and any interest received by the Assignee in excess of the Agreed Interest Rate shall be remitted to the Assignor. In the event interest for the period from the Effective Date to but not including the Payment Date is not paid by the applicable Borrower with respect to any LIBOR Rate Loan sold by the Assignor to the Assignee hereunder, the Assignee shall pay to the Assignor interest for such period on the portion of such LIBOR Rate Loan sold by the Assignor to the Assignee hereunder at the applicable rate provided by the Loan Agreement. In the event a prepayment of any LIBOR Rate Loan which is existing on the Payment Date and assigned by the Assignor to the Assignee hereunder occurs after the Payment Date but before the end of the Interest Period applicable to such LIBOR Rate Loan, the Assignee shall remit to the Assignor the excess of the prepayment penalty paid with respect to the portion of such LIBOR Rate Loan assigned to the Assignee hereunder over the amount which would have been paid if such prepayment penalty was calculated based on the Agreed Interest Rate. The Assignee will also promptly remit to the Assignor (i) any principal payments received from the Agent with respect to LIBOR Rate Loans, prior to the Payment Date and (ii) any amounts of interest on Loans and fees received from the Agent which relate to the portion of the Loans assigned to the Assignee hereunder for periods prior to the Effective Date, in the case of Prime Rate Loans or fees, or the Payment Date, in the case of LIBOR Rate Loans, and not previously paid by the Assignee to the Assignor.[1] In the event that either party hereto receives any payment to which the other party hereto is entitled under this Assignment Agreement, then the party receiving such amount shall promptly remit it to the other party hereto.

5.  <u>Fees Payable by the Assignee</u>. The [Assignee shall pay to the Assignor a fee on each day on which a payment of interest or commitment fees is made under the Loan Agreement with respect to the amounts assigned to the Assignee hereunder (other than a payment of interest or commitment fees for the period prior to the Effective Date or, in the case of LIBOR Rate Loans, the Payment Date, which the Assignee is obligated to deliver to the Assignor pursuant to <u>Section 4</u> hereof). The amount of such fee shall be the difference between (i) the interest or fee, as applicable, paid with respect to the amounts assigned to the Assignee hereunder and (ii) the interest or fee, as applicable, which would have been paid with respect to the amounts assigned to the Assignee hereunder if each interest rate was ___ of 1% less than the interest rate paid by any Borrower or if the commitment fee was of ___ 1% less than the commitment fee paid by any

---

[1] Each Assignor may insert its standard payment provisions in lieu of the payment terms included in this Exhibit.

Borrower, as applicable. In addition, the] [Assignee] [Assignor] agrees to pay a $3,500 processing fee required to be paid to the Agent in connection with this Assignment Agreement.[2]

6. <u>Representations of The Assignor; Limitations on the Assignor's Liability</u>. The Assignor represents and warrants that it is the legal and beneficial owner of the interest being assigned by it hereunder and that such interest is free and clear of any adverse claim created by the Assignor. It is understood and agreed that the assignment and assumption hereunder are made without recourse to the Assignor and that the Assignor makes no other representation or warranty of any kind to the Assignee. Neither the Assignor, the Agent, nor any other Lender, nor any of its officers, directors, employees, agents or attorneys shall be responsible for (i) the due execution, legality, validity, enforceability, genuineness, sufficiency or collectibility of any Other Agreement, including without limitation, documents granting the Assignor, Agent and the other Lenders a security interest in assets of any Borrower, (ii) any representation, warranty or statement made in or in connection with any of the Loan Documents, (iii) the financial condition or creditworthiness of any Borrower, (iv) the performance of or compliance with any of the terms or provisions of any of the Loan Documents, (v) inspecting any of the property, books or records of any Borrower, (vi) the validity, enforceability, perfection, priority, condition, value or sufficiency of any collateral securing or purporting to secure the Loans or (vii) any mistake, error of judgment, or action taken or omitted to be taken in connection with the Loans or the Loan Documents.

7. <u>Representations of the Assignee</u>. The Assignee (i) confirms that it has received a copy of the Loan Agreement, together with copies of the financial statements requested by the Assignee and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment Agreement, (ii) agrees that it will, independently and without reliance upon the Agent, the Assignor or any other Lender and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under the Loan Documents, (iii) appoints and authorizes the Agent to take such action as agent on its behalf and to exercise such powers under the Loan Documents as are delegated to the Agent by the terms thereof, together with such powers as are reasonably incidental thereto, (iv) agrees that it will perform in accordance with their terms all of the obligations which by the terms of the Loan Documents are required to be performed by it as a Lender, (v) agrees that its payment instructions and notice instructions are as set forth in the attachment to <u>Schedule 1</u>, (vi) confirms that none of the funds, monies, assets or other consideration being used to make the purchase and assumption hereunder are "plan assets" as defined under ERISA and that its rights, benefits and interests in and under the Loan Documents will not be "plan assets" under ERISA, [and (vii) attaches the forms prescribed by the Internal Revenue Service of the United States certifying that the Assignee is entitled to receive payments under the Loan Documents without deduction or withholding of any United States federal income taxes].[3]

---

[2] Assignor and Assignee to insert applicable payment terms.

[3] To be inserted if the Assignee is not incorporated under the laws of the United States, or a state thereof.

8. <u>Indemnity</u>. The Assignee agrees to indemnify and hold the Assignor harmless against any and all losses, costs and expenses (including, without limitation, reasonable attorneys' fees) and liabilities incurred by the Assignor in connection with or arising in any manner from the Assignee's non-performance of the obligations assumed under this Assignment Agreement.

9. <u>Subsequent Assignments</u>. After the Effective Date, the Assignee shall have the right pursuant to <u>Section 20</u> of the Loan Agreement to assign the rights which are assigned to the Assignee hereunder to any entity or person, provided that (i) any such subsequent assignment does not violate any of the terms and conditions of the Loan Documents or any law, rule, regulation, order, writ, judgment, injunction or decree and that any consent required under the terms of the Loan Documents has been obtained and (ii) unless the prior written consent of the Assignor is obtained, the Assignee is not thereby released from its obligations to the Assignor hereunder, if any remain unsatisfied, including, without limitation, its obligations under <u>Section 4</u>, <u>5</u> and <u>8</u> hereof.

10. <u>Reductions of Aggregate Commitment</u>. If any reduction in the aggregate Commitment occurs between the date of this Assignment Agreement and the Effective Date, the percentage interest specified in Item 3 of <u>Schedule 1</u> shall remain the same, but the dollar amount purchased shall be recalculated based on the reduced aggregate Commitment.

11. <u>Entire Agreement</u>. This Assignment Agreement and the attached Notice of Assignment embody the entire agreement and understanding between the parties hereto and supersede all prior agreements and understandings between the parties hereto relating to the subject matter hereof.

12. <u>Governing Law</u>. This Assignment Agreement shall be governed by and interpreted and enforced in accordance with the internal laws (without regard to conflicts of law provisions) of the State of Illinois.

13. <u>Notices</u>. Notices shall be given under this Assignment Agreement in the manner set forth in the Loan Agreement. For the purpose hereof, the addresses of the parties hereto (until notice of a change is delivered) shall be the address set forth in the attachment to <u>Schedule 1</u>.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties hereto have executed this Assignment Agreement by their duly authorized officers as of the date first above written.

[NAME OF ASSIGNOR]

By:_____
Name:_____
Title:_____

[NAME OF ASSIGNEE]

By:_____
Name:_____
Title:_____

SCHEDULE 1
to Assignment Agreement

1. Description and Date of Loan Agreement:

   Loan and Security Agreement dated as of September __, 2006, among BLACKHAWK AUTOMOTIVE PLASTICS, INC., a Delaware corporation, LASALLE BUSINESS CREDIT, LLC, as agent ("**Agent**"), and each lender from time to time a party thereto.

2. Date of Assignment Agreement: _____, 200___.

3. Amounts to be Assigned (As of Date of Item 2 above):

|  | Revolving Loan Commitment | Term Loan A Commitment | Term Loan B Commitment |
|---|---|---|---|
| Total of Commitments (Loans) Under the Loan Agreement | $_____ | $_____ | $_____ |
| Assignees Percentage of Each Facility Purchased under the Assignment Agreement | ___% | ___% | ___% |
| Amount of Assigned Share of Each Facility Under the Assignment Agreement | $_____ | $_____ | $_____ |

4. Assignee's Aggregate (Loan Amount)/(Commitment Amount) Purchased Hereunder: $_____

5. Proposed Effective Date: _____, _____

Accepted and Agreed:

[NAME OF ASSIGNOR]                           [NAME OF ASSIGNEE]

By:_____                  By:_____
Name:_____                  Name:_____
Title:_____                  Title:_____

Attachment to SCHEDULE 1 to ASSIGNMENT AGREEMENT

Attach Assignor's Administrative Information Sheet, which must include notice address for the Assignor and the Assignee

All notices to Assignee in connection with the Loan Agreement shall be sent to:

_____
_____
_____
_____

Wire Transfer instructions for the Assignee are as follows:

_____
ABA #_____
Acct. No._____
Credit to:_____

APPENDIX I
to Assignment Agreement

NOTICE
OF ASSIGNMENT

_____, _____

To:

Agent:
LaSalle Business Credit, LLC ("Agent")
2600 West Big Beaver
Mail Code: MO 900-345
Troy, Michigan 48084

Attention: William J. Stewart
           First Vice President
Tel: 248-822-5854
Fax: 248-822-5809
william.stewart@abnamro.com

Borrower:
Blackhawk Automotive Plastics, Inc.
800 Pennsylvania Avenue
Salem, OH 44460

Attention: Michael W. Martell, CFO
Tel: 330-332-6421
Fax: 330-332-6568
mwmartel@blackhawkplastics.com

From: [NAME OF ASSIGNOR] (the "Assignor")
      [NAME OF ASSIGNEE] (the "Assignee")

1. We refer to that Loan and Security Agreement (the "Loan Agreement") described in Item 1 of Schedule 1 attached hereto ("Schedule 1"). Capitalized terms used herein and not otherwise defined herein shall have the meanings attributed to them in the Loan Agreement.

2. This Notice of Assignment (this "Notice") is given and delivered to the Borrower and the Agent pursuant to Section 20 of the Loan Agreement.

3. The Assignor and the Assignee have entered into an Assignment Agreement, dated as of _____, 200\_\_ (the "Assignment"), pursuant to which, among other things, the Assignor has sold, assigned, delegated and transferred to the Assignee, and the Assignee has purchased, accepted and assumed from the Assignor the percentage interest specified in Item 3 of Schedule 1 of all outstandings, rights and obligations under the Loan Agreement relating to the facilities listed in Item 3 of Schedule 1. The Effective Date of the Assignment shall be the later of the date specified in Item 5 of Schedule 1 or two (2) Business Days (or such shorter period as agreed to by the Agent) after this Notice of Assignment and any consents and fees required by Section 20(c) of the Loan Agreement have been delivered to the Agent, provided that the Effective Date shall not occur if any condition precedent agreed to by the Assignor and the Assignee has not been satisfied.

4.   The Assignor and the Assignee hereby give to the Borrower and the Agent notice of the assignment and delegation referred to herein. The Assignor will confer with the Agent before the date specified in Item 5 of Schedule 1 to determine if the Assignment Agreement will become effective on such date pursuant to Section 3 hereof, and will confer with the Agent to determine the Effective Date pursuant to Section 3 hereof if it occurs thereafter. The Assignor shall notify the Agent if the Assignment Agreement does not become effective on any proposed Effective Date as a result of the failure to satisfy the conditions precedent agreed to by the Assignor and the Assignee. At the request of the Agent, the Assignor will give the Agent written confirmation of the satisfaction of the conditions precedent.

5.   The Assignor or the Assignee shall pay to the Agent on or before the Effective Date the processing fee of $3,500 required by Section 20 of the Loan Agreement.

6.   If Notes are outstanding on the Effective Date, the Assignor and the Assignee request and direct that the Agent prepare and cause the Borrower to execute and deliver new Notes or, as appropriate, replacements notes, to the Assignor and the Assignee. The Assignor and, if applicable, the Assignee each agree to deliver to the Agent the original Note received by it from Borrower upon its receipt of a new Note in the appropriate amount.

7.   The Assignee advises the Agent that notice and payment instructions are set forth in the attachment to Schedule 1.

8.   The Assignee hereby represents and warrants that none of the funds, monies, assets or other consideration being used to make the purchase pursuant to the Assignment are "plan assets" as defined under ERISA and that its rights, benefits, and interests in and under the Loan Agreement and the Other Agreement (collectively, the "Loan Documents") will not be "plan assets" under ERISA.

9.   The Assignee authorizes the Agent to act as its agent under the Loan Documents in accordance with the terms thereof. The Assignee acknowledges that the Agent has no duty to supply information with respect to any Borrower or the Loan Documents to the Assignee until the Assignee becomes a party to the Loan Agreement.

*[SIGNATURE PAGES FOLLOW]*

[NAME OF ASSIGNOR]

By:_____
Name:_____
Title:_____

[NAME OF ASSIGNEE]

By:_____
Name:_____
Title:_____

ACKNOWLEDGED AND CONSENTED
TO:

LASALLE BUSINESS CREDIT, LLC, as
Agent

By:_____
Name:_____
Title:_____

<u>BORROWER:</u>

BLACKHAWK AUTOMOTIVE PLASTICS, INC.

By:_____
Name:_____
Title:_____

[Attach photocopy of <u>Schedule 1</u> to Assignment]

## SCHEDULE 1

## PERMITTED LIENS

| Secured Party | Filing Number | Filing Date | Collateral |
|---|---|---|---|
| Ameritech Credit Corporation | 10670633 | 07/11/01 | All telecommunications and data equipment, including telephones, modems, switchboards... etc. *Precautionary filing |
| *amendment | 21221997 | 04/26/02 | Restated collateral description. All telecommunications and data equipment, including telephones, modems, switchboards... etc. *Precautionary filing |
| Citicorp Vendor Finance, Inc. | 10803382 | 07/26/01 | All leased equipment, together with all accessions, additions... etc., including all proceeds and insurance proceeds. |
| -continuation | 61732064 | 5/23/06 | |
| Ameritech Credit Corporation | 20755938 | 03/06/02 | All telecommunications and data equipment, including telephones, modems, switchboards... etc. *Precautionary filing. |
| *amendment | 21039340 | 04/05/02 | Restated collateral description. All telecommunications and data equipment, including telephones, modems, switchboards... etc. *Precautionary filing |
| Ameritech Credit Corporation | 20755995 | 03/06/02 | All telecommunications and data equipment, including telephones, modems, switchboards... etc. *Precautionary filing. |

| Secured Party | Filing Number | Filing Date | Collateral |
| --- | --- | --- | --- |
| *amendment* | 21039381 | 04/05/02 | Restated collateral description. All telecommunications and data equipment, including telephones, modems, switchboards… etc. *Precautionary filing |
| Ameritech Credit Corporation | 20756035 | 03/06/02 | All telecommunications and data equipment, including telephones, modems, switchboards… etc. *Precautionary filing. |
| *amendment* | 21039423 | 04/05/02 | Restated collateral description. All telecommunications and data equipment, including telephones, modems, switchboards… etc. *Precautionary filing |
| Ameritech Credit Corporation | 22179871 | 08/23/02 | All telecommunications and data equipment, including telephones, modems, switchboards… etc. *Precautionary filing. |
| Ameritech Credit Corporation | 23048224 | 12/06/02 | All telecommunications and data equipment, including telephones, modems, switchboards… etc. *Precautionary filing. |
| Ameritech Credit Corporation | 23048364 | 12/06/02 | All telecommunications and data equipment, including telephones, modems, switchboards… etc. *Precautionary filing. |

| Secured Party | Filing Number | Filing Date | Collateral |
|---|---|---|---|
| Ameritech Credit Corporation | 23048547 | 12/06/02 | All telecommunications and data equipment, including telephones, modems, switchboards… etc. *Precautionary filing. |
| D.L. Peterson Trust | 30738529 | 03/13/03 | Specific equipment. *Precautionary filing. |
| D.L. Peterson Trust | 32002775 | 07/14/03 | Specific equipment. *Precautionary filing. |
| Ameritech Credit Corporation | 32708397 | 10/16/03 | All telecommunications and data equipment, including telephones, modems, switchboards… etc. *Precautionary filing. |
| Bank One, NA | 32830845 | 10/28/03 | All accounts receivable which arise out of the sale of goods and services to Johnson Controls, Inc., and all proceeds and other rights with respect to such accounts receivable pursuant to the Receivables Purchase Agreement. *Filed for informational purposes. |
| *amendment | 54032224 | 12/28/05 | Amended Secured Party name to JPMorgan Chase Bank, National Association. |
| Ameritech Credit Corporation | 42822130 | 10/07/04 | All telecommunications and data equipment, including telephones, modems, switchboards… etc. *Precautionary filing. |
| Commercial Tool & Die, Inc. | 50540105 | 02/17/05 | Specific equipment. |
| Commercial Tool & Die, Inc. | 50540279 | 02/17/05 | Specific equipment. |
| Commercial Tool & Die, Inc. | 50540329 | 02/17/05 | Specific equipment. |
| Commercial Tool & Die, Inc. | 50540386 | 02/17/05 | Specific equipment. |
| Commercial Tool & Die, Inc. | 50540535 | 02/17/05 | Specific equipment. |

| Secured Party | Filing Number | Filing Date | Collateral |
|---|---|---|---|
| Mico-Matic Tool, Inc. | 51233338 | 04/21/05 | All molds and tools produced by Secured Party for the Debtor until Secured Party is paid in full. This lien is perfected and has priority over any other lien, by Ohio law. Any mold or work in progress for any mold requested by the Debtor is subject to this perfected statutory lien in favor of Secured Party. |
| Sky-Tek, L.L.C. | 51926055 | 06/23/05 | Specific equipment. *Filed in connection with an agricultural lien. |
| Sky-Tek, L.L.C. | 51928085 | 06/23/05 | Specific equipment. *Filed in connection with an agricultural lien. |
| Sky-Tek, L.L.C. | 51929489 | 06/23/05 | Specific equipment. *Filed in connection with an agricultural lien. |
| Sky-Tek, L.L.C. | 51929745 | 06/23/05 | Specific equipment. *Filed in connection with an agricultural lien. |
| Ameritech Credit Corporation | 53363190 | 10/28/05 | *in-lieu filing for Columbiana, Ohio |
| Ameritech Credit Corporation | 53368694 | 10/28/05 | *in-lieu filing for Columbiana, Ohio |
| Ameritech Credit Corporation | 60717538 | 3/1/06 | *in-lieu filing for Michigan SOS |
| *amendment | 62948701 | 08/23/06 | Amended Secured Party name to AT&T Capital Services, Inc. |
| Ameritech Credit Corporation | 61533058 | 5/5/06 | *in-lieu filing for Ohio SOS |
| -amendment | 62949253 | 8/23/06 | Amended Secured Party name to AT&T Capital Services, Inc. |
| PME Companies, Inc. | 61618131 | 5/12/06 | Specific equipment |

| Secured Party | Filing Number | Filing Date | Collateral |
|---|---|---|---|
| Branson Ultrasonics Corporation | 62043271 | 6/15/06 | Specific equipment |
| Citicorp Vendor Finance Inc. *continuation* | AP300053 20053420762 | 12/08/00 12/08/05 | Specific equipment. |
| Ameritech Credit Corporation | AP292522 | 11/15/00 | All telecommunications and data equipment, including telephones, modems, switchboards… etc. *Precautionary filing. |
| Ameritech Credit Corporation | AP297763 | 12/4/00 | All telecommunications and data equipment, including telephones, modems, switchboards… etc. *Precautionary filing. |
| MHI Injection Molding Machinery, Inc. | AP307070 | 01/12/01 | Specific equipment. *Filed for informational purposes only |
| MHI Injection Molding Machinery, Inc. | AP313549 | 02/07/01 | Specific equipment. *Filed for informational purposes only |
| Ameritech Credit Corporation | OH00078516853 | 06/17/04 | All telecommunications and data equipment, including telephones, modems, switchboards… etc. *Precautionary filing. |
| Active Mould & Design Ltd. | OH00088309311 | 04/13/05 | Specific equipment. |
| Reko Tool & Mould (1987) Inc | OH00088426864 | 04/19/05 | Specific equipment. |
| Yushin America, Inc. | OH00090528480 | 06/17/05 | Specific equipment. |
| Active Mould & Design Ltd. | OH00092635388 | 08/25/05 | Specific equipment. |
| Mattson Tool & Die Corp. | OH00097363316 | 01/03/06 | Specific equipment. |
| Mattson Tool & Die Corp. | OH00097759749 | 01/13/06 | Specific equipment. |
| Active Mould & Design, Ltd. | OH00104586590 | 7/19/06 | Specific equipment. |
| AB Automation | OH00104586712 | 7/19/06 | Specific equipment. |
| Automotive Gauge & Fixture Limited | OH00104587168 | 7/19/06 | Specific equipment. |
| Active Mould & Design Ltd. | OH00099077684 | 02/24/06 | Specific equipment. |
| Mattson Tool & Die Corp. | OH00099116406 | 2/27/06 | Specific equipment. |
| Mattson Tool & Die Corp. | OH00098235295 | 1/30/06 | Specific equipment. |
| Mattson Tool & Die Corp. | OH00098483240 | 2/6/06 | Specific equipment. |
| Mattson Tool & Die Corp. | OH00098996015 | 2/21/06 | Specific equipment. |