07 C 6438

JUDGE PALLMEYER
MAGISTRATE JUDGE BROWN

# EXHIBIT D

# FOURTH AMENDMENT TO FORBEARANCE AGREEMENT AND SIXTH AMENDMENT TO LOAN AND SECURITY AGREEMENT

**Borrower:**          **Blackhawk Automotive Plastics, Inc.**

**Address:**           **800 Pennsylvania Avenue**
                       **Salem, Ohio 44460**
                       **Attention: President**

**Date:**              **As of August 1, 2007 ("Effective Date")**

THIS **FOURTH AMENDMENT TO FORBEARANCE AGREEMENT AND SIXTH AMENDMENT TO LOAN AND SECURITY AGREEMENT** (this "**Amendment**"), effective as of the above-referenced date, is made by and among **BLACKHAWK AUTOMOTIVE PLASTICS, INC.**, a Delaware corporation (the "**Borrower**"), **LASALLE BUSINESS CREDIT, LLC**, a Delaware limited liability company (in its individual capacity, "**LaSalle**"), as agent ("**Agent**") for the lenders (the "**Lenders**") party hereto, and the Lenders.

## RECITALS:

A.     The Borrower, the Lenders and the Agent have entered into that certain Loan and Security Agreement dated as of October 4, 2006 (as amended, restated, supplemented or otherwise modified from time to time, the "**Loan Agreement**"), pursuant to which the Lenders made certain loans and other financial accommodations to the Borrower, subject to the terms thereof;

B.     Pursuant to the terms of the Loan Agreement, certain Other Agreements (as defined in the Loan Agreement) and that certain Letter Agreement dated as of January 29, 2007, as amended (the "**Letter Agreement**"), the Lenders made certain loans and other extensions of credit available to the Borrower, and in consideration thereof the Borrower has granted to the Lenders liens on and first priority security interests in substantially all of the assets of the Borrower, including, without limitation, Borrower's accounts, general intangibles, inventory, equipment and all other goods, chattel paper, instruments, documents, investment property, deposits, policies and certificates of insurance, securities, choses in action, cash and certain other assets and property as set forth in the Loan Agreement, the Letter Agreement and the Other Agreements;

C.     Pursuant to the terms of the Letter Agreement, as extended by that certain Letter Agreement dated as of March 12, 2007 (as so extended, the "**Letter Agreement**"), the Lenders previously agreed to provide the Borrower with a temporary one-time over advance under the Revolving Loan Commitment as of January 29, 2007 not to exceed $2,000,000 (the "**Over Advance**") at any time subject to, among other items, (i) the Borrower's agreement to repay such Over Advance in full to the Lenders on or before the close of business on June 30, 2007 (the "**Over Advance Termination Date**") and (ii) the

execution and delivery by Key Equity Capital Corporation, an Ohio corporation ("**Key Equity Capital**"), of that certain Limited Guaranty Agreement dated as of January 29, 2007 (the "**Initial Key Guaranty**") in favor of Agent and Lenders;

        D.      The Events of Default set forth on Schedule A to the Forbearance Agreement (as defined below) and as set forth in that certain Default Letter dated as of July 30, 2007 from Agent to the Borrower have previously occurred and are continuing under the Loan Agreement (collectively referred to herein as the "**Prior Defaults**") and the Borrower is on notice of such Prior Defaults;

        E.      Additional Events of Default set forth on Exhibit B hereto have occurred and are continuing under the Loan Agreement as of the date hereof (the "**Additional Defaults**"; together with the Prior Defaults, the "**Current Defaults**");

        F.      As a result of the Current Defaults, the Agent and Lenders have, *inter alia,* the right to take one or more of the actions set forth in Section 16 of the Loan Agreement;

        G.      The Borrower acknowledges all of the foregoing and states that the Current Defaults have occurred and are continuing under the Loan Documents;

        H.      The Borrower, the Agent and the Lenders previously entered into that certain Forbearance Agreement and Amendment to Loan Agreement and Letter Agreement dated as of March 28, 2007, as amended by that certain Amendment to Forbearance Agreement and Second Amendment to Loan and Security Agreement dated as of April 24, 2007, that certain Reaffirmation of Forbearance Agreement and Third Amendment to Loan and Security Agreement dated as of May 30, 2007, that certain Second Amendment to Forbearance Agreement and Fourth Amendment to Loan and Security Agreement dated as of June 21, 2007 and that certain Third Amendment to Forbearance Agreement, Fifth Amendment to Loan and Security Agreement and Second Amendment to Letter Agreement dated as of June 28, 2007 (collectively, the "**Forbearance Agreement**") pursuant to which the Lenders agreed to forbear in the exercise and enforcement of their rights, powers and remedies under the Loan Documents in accordance with the terms set forth therein (the Loan Agreement, the Letter Agreement, the Other Agreements, the Forbearance Agreement and this Amendment are collectively referred to as the "**Loan Documents**");

        I.      At the request of the Borrower, the Lenders have agreed to, among other items, (i) extend the Forbearance Termination Date to March 31, 2008 and (ii) amend the Loan Agreement to modify the borrowing base in accordance with the terms herein and amend certain other terms and conditions thereof in accordance with the terms herein; and

        J.      The Lenders are willing to agree to such amendments and continue to forbear from the exercise and enforcement of such rights and remedies for a limited time only upon the Borrower's and Key Equity Capital's full and complete compliance with and fulfillment of the terms and conditions set forth herein and under the Forbearance

Agreement in the manner hereinafter stated, provided that the Agent's and Lenders' rights and remedies under the Loan Documents are not otherwise waived or impaired.

NOW, **THEREFORE,** in consideration of the foregoing and the agreements, promises and covenants set forth below, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    **INCORPORATION OF THE FORBEARANCE AGREEMENT**. All capitalized terms which are not otherwise defined hereunder shall have the same meanings as set forth in the Forbearance Agreement. To the extent any terms and provisions of the Forbearance Agreement are inconsistent with the amendments set forth in Section 2 below, such terms and provisions shall be deemed superseded hereby. Except as specifically set forth herein, the Forbearance Agreement shall remain in full force and effect and all of its provisions shall be binding on the parties hereto.

2.    **AMENDMENTS OF THE FORBEARANCE AGREEMENT AND THE LOAN AGREEMENT**.

(a)    The Forbearance Agreement is hereby amended to read as follows:

(i)    The definition of the term **"Forbearance Termination Date"** is hereby amended and restated to read as follows:

"Forbearance Termination Date" shall mean March 31, 2008.

(ii)    Section 4(h) of the Forbearance Agreement is hereby amended and restated to read as follows:

(h)    During the Forbearance Period, the Borrower is permitted to defer payment of the Applicable Monthly Principal Installments (as defined below) until the Forbearance Termination Date; provided, however, that the Borrower shall pay the entire amount of all Applicable Monthly Principal Installments to the Agent on the Forbearance Termination Date. **"Applicable Monthly Principal Installments"** shall mean the scheduled monthly principal installments of Term Loan A required to be paid by the Borrower in April, 2007 through March 30, 2008 pursuant to Section 2(d)(ii) of the Loan Agreement.

(iii)    A new Section 7(e) is added to the Forbearance Agreement which reads as follows:

(e)    Notwithstanding anything to the contrary set forth in this Agreement, during the Forbearance Period, any existing or new defaults by Borrower with respect to the financial covenants set forth in Section 14 of the Loan Agreement (**"Covenant**

Defaults") shall be treated as Current Defaults and not as Forbearance Events of Default, and any such Covenant Default shall not constitute cause for Lenders to terminate the Forbearance Period or to cease advancing. Lenders do not waive any Covenant Defaults.

(b)     The Loan Agreement is hereby amended on and after the date of this Amendment through the Forbearance Period as follows:

(i)     The following new definitions are added to Section 1 of the Loan Agreement to read as follows:

"**Designated Customers**" means, collectively, General Motors Corporation and International Automotive Components Group North America, Inc.

"**Reaffirmation of New Key Guaranty**" means that certain Reaffirmation of Guaranty dated as of August 1, 2007 executed by Key Equity Capital in favor of the Agent, as amended, modified or restated from time to time.

(ii)     Section 2(a)(i) is hereby amended and restated to read in its entirety as follows:

(i)     Up to (A) eighty-five percent (85%) of an amount equal to the face amount, less maximum discounts, credits and allowances which may be taken by or granted to Account Debtors in connection therewith in the ordinary course of Borrower's business, of Borrower's Eligible Accounts arising from Account Debtors other than Designated Customers (exclusive of Tooling Accounts); provided that such advance rate shall be reduced by one (1) percentage point for each whole or partial percentage point by which Dilution (as determined by Agent in good faith based on the results of the most recent twelve (12) month period for which Agent has conducted a field audit of Borrower) exceeds five percent (5%), plus (B) during the Forbearance Period, without duplication with clause (A) above, up to ninety percent (90%) of an amount equal to the face amount of Borrower's Eligible Accounts arising with respect to Designated Customers (exclusive of Tooling Accounts); plus

(iii)     Section 2(a)(iii) is hereby amended and restated to read in its entirety as follows:

(iii)     Up to the lesser of (A) the sum of (x) fifty-five percent (55%) of the lower of cost or market value of Borrower's Eligible Inventory held for sale to customers other than the Designated Customers plus (y) during the Forbearance Period and

without duplication with clause (A) above, seventy-five percent (75%) of the lower of cost or market value of Borrower's Eligible Inventory held for sale to Designated Customers subject to the Inventory repurchase provisions set forth in Section 1(D) of the Accommodation Agreement, and (B) Six Million Dollars ($6,000,000); minus

(iv)    Section 2(a)(v) of the Loan Agreement is hereby amended and restated to read in its entirety as follows:

(v)    such other reserves as Agent elects, in its reasonable discretion to establish from time to time (provided, however, during the Forbearance Period, Agent agrees not to (x) set further or additional reserves based on slow moving, excess or obsolete inventory, or (y) change eligibility criteria under the Loan Agreement for Eligible Inventory or Eligible Accounts); plus

(v)    Section 2(a)(vi) is hereby amended and restated to read in its entirety as follows:

(vi)    in Agent's discretion, during the Forbearance Period, up to an additional $4,500,000 (the "**Additional Advance**") provided that any such Additional Advance shall be subject to the continued existence and validity of the New Key Guaranty at all times; plus

(vi)    A new Section 2(a)(vii) is hereby appended to the Loan Agreement to read in its entirety as follows:

(vii)    an amount equal to $2,589,342.55 or such lesser amount as determined in accordance with Section 2(A)(x) of the Accommodation Agreement.

(vii)    Notwithstanding anything to the contrary contained in Section 2(d)(iii), Term Loan B shall be due and payable in a single installment of all principal due and owing, plus unpaid interest thereon, on March 31, 2008, and monthly principal payments shall be deferred until such date.

(viii)    A new Section 15(p) is hereby appended to the Loan Agreement to read in its entirety as follows:

(p)    Other Agreements.  The occurrence of any default or beach by Borrower or Designated Customers under that certain (i) Access and Security Agreement dated as of August 1, 2007 among Borrower and Designated Customers (the "**Access Agreement**") or (ii) Accommodation Agreement dated as of August 1, 2007 among Borrower, Agent, Lenders and Designated

Customers (the "**Accommodation Agreement**"), after expiration of any applicable cure period without cure of such default or breach.

(ix)    During the Forbearance Period (and so long as the Forbearance Period has not terminated pursuant to the terms of the Forbearance Agreement as amended from time to time), Agent and Lenders agree that (i) any change in classification of Accounts and Inventory relative to the Designated Customers must be reviewed and approved by the Designated Customers and (ii) beginning on October 11, 2007 and continuing through the Forbearance Period, the post-default rate of interest described in Section 4(a)(iii) of the Loan Agreement will not be charged by Lenders.

3.      **ACKNOWLEDGMENT.**  The Borrower hereby acknowledges, agrees, and reaffirms that:

(a)     The Current Defaults have occurred and are continuing and are the only Events of Default in existence as of the date hereof;

(b)     The Borrower waives any requirement in the Loan Documents that the Agent or Lenders provide written notice of any Current Defaults and the Borrower acknowledges that the Agent and Lenders have not, as of the date of execution of this Amendment, otherwise expressly or impliedly waived any of the Current Defaults;

(c)     The Agent and Lenders maintain valid, properly perfected security interests in and liens on all of the Collateral described in the Loan Documents, which liens are paramount in priority and interest to all other liens and security interests, if any, of any other parties relating to the Collateral except as expressly stated in the Loan Documents;

(d)     The Loan Documents constitute legal, valid and binding obligations enforceable in accordance with their terms by the Agent and Lenders against the Borrower subject to bankruptcy, insolvency, reorganization moratorium and other laws with general application affecting the rights and remedies of creditors and secured parties, and general principles of equity regardless of whether applied in a proceeding in equity or at law.  The Borrower reaffirms its obligations under the Loan Documents including, without limitation, the Liabilities.  The Borrower also agrees that it shall not dispute the validity or enforceability of the Loan Documents or any of its obligations hereunder or thereunder, or the validity, priority, enforceability or extent of the Agent's and Lenders' security interest in and lien on any Collateral in any judicial, administrative or other proceeding, either during or following the termination or expiration of the Forbearance Period;

(e)    Subject to the terms herein, the Agent and Lenders have the right to immediately enforce their right to payment of all Liabilities and, in connection therewith, to immediately enforce their security interests in, and liens on, the Collateral and to exercise all other rights, powers and remedies provided to Agent and/or Lenders under the Loan Documents or at law, in equity or by statute;

(f)    Nothing contained in this Amendment shall, at any time, require the Agent or Lenders to make loans or other extensions of credit to the Borrower or to provide for the issuance of Letters of Credit for the account of the Borrower or to permit overdrafts in any account maintained by or on behalf of the Borrower and any such obligations of the Agent and Lenders shall be governed only by, and shall remain subject only to, the terms of the Loan Documents (as amended hereby); and

(g)    Borrower does not intend to file a petition for relief under any Chapter of the United States Bankruptcy Code or any other state or federal insolvency laws or laws providing relief of debtors and the Agent and Lenders have relied on such representation.

(h)    Attached hereto as Schedule D is a projected weekly Cash Receipt and Disbursement Budget for the 13-week period beginning on September 27, 2007 Agreement and ending on December 28, 2007.

4.    **CONDITIONS TO LIMITED FORBEARANCE AND AMENDMENTS HEREIN.**    In addition to the other provisions set forth in this Amendment, the Agent's and Lenders' forbearance and the amendments set forth herein are expressly subject to and conditioned upon the continual compliance by the Borrower with the following terms, conditions and provisions:

(a)    This Amendment shall have been executed and delivered to the Agent by the Borrower;

(b)    The Borrower shall pay on demand (i) all legal fees and expenses incurred by the Lenders on, prior and following the date hereof in connection with the preparation, drafting, negotiation, monitoring and enforcement of this Amendment, the Loan Documents and all other documents provided for herein or delivered or to be delivered in connection herewith (including any amendment, supplement or waiver to any Loan Document or this Amendment) and (ii) all costs, fees and expenses of third-party auditors and consultants engaged by the Lenders or their counsel. In order to cause timely payment to be made to Agent and Lenders of Borrower's Liabilities (including, but not limited to, the costs, fees and expenses set forth above) as and when due, the Borrower authorizes and directs Agent to (x) debit the amount of Borrower's Liabilities to any deposit account of the Borrower of which any Lender maintains control or (y) add any such Liabilities to the outstanding amount of Revolving Loans under the Revolving Loan Commitment.

(c)    All of the warranties and representations of the Borrower contained herein and in the Loan Documents shall be true and correct in all material respects as of the date hereof (other than as a result of the existence of the Current Defaults), except to the extent that such representations and warranties specifically refer to an earlier date, in which case they shall be true and correct in all respects as of such earlier date;

(d)    On or before the Effective Date, the Borrower shall deliver to Agent and Lenders copies of resolutions or written consents of the board(s) of directors of the Borrower authorizing the execution and delivery and the consummation of the transactions contemplated by (i) the Forbearance Agreement and (ii) this Amendment and all other documents or instruments to be executed and delivered in conjunction therewith certified by the Secretary or Manager, as applicable, of the Borrower as of the delivery date, in form and substance reasonably satisfactory to Agent;

(e)    On or before the Effective Date, the Borrower shall deliver to Agent and Lenders copies of resolutions or written consents of the board(s) of directors of Key Equity Capital Corporation authorizing the execution and delivery of the Reaffirmation of Key Guaranty certified by the Secretary or Manager, as applicable, of the Guarantor as of the delivery date, in form and substance reasonably satisfactory to Agent;

(f)    The Borrower shall provide the Agent with evidence of insurance as required by Section 12(e) of the Loan Agreement on or prior to the date hereof;

(g)    On or prior to the Effective Date and each week ended thereafter, the Borrower shall provide the Lenders with a rolling 13-week cash receipt and disbursement budget (which shall include projected borrowing availability under the Revolving Loan Commitment) in form and substance acceptable to the Lenders beginning on the date of this Amendment and updated on a weekly basis which shall be reviewed and approved in writing by Key Equity Capital, its agent or such other third party consultant acceptable to Agent in its sole discretion which shall replace the existing Budget effective on August 1, 2007 (the "**Budget**");

(h)    During the Forbearance Period, the Borrower shall provide the Lenders with weekly variance reports in form acceptable to the Lenders on or prior to Wednesday of each week comparing actual results to the projections set forth in the Budget, which reports shall be reviewed and approved in writing by Key Equity Capital, its agent or such other third party consultant acceptable to Agent in its sole discretion;

(i)    On or prior to October 19, 2007, the Borrower shall provide Lenders with a commitment for the refinancing of the Loans which commitment terms shall be in form and substance acceptable to the Lenders (the "**Take-Out Financing**"); provided, however, Borrower's failure to provide a commitment for

the Take-Out Financing shall not result in an Event of Default if Borrower begins an expedited sale process, acceptable in all respects to Agent and the Lenders ("**Sale Process**");

(j)     Unless Borrower has initiated the Sale Process pursuant to clause (i) above, on or prior to November 16, 2007, the Borrower shall close the Take-Out Financing and repay all of the Liabilities;

(k)     During the Forbearance Period, the Borrower shall ensure that Key Equity Capital Corporation oversees all cash management and cash forecasting of the Borrower and provides weekly updates to the Lenders as to such financial activities;

(l)     The Borrower shall also deliver to Agent and the Lenders each of the Notes, documents and certificates set forth on the Closing Document List attached hereto as Exhibit A;

(m)     During the Forbearance Period, the Borrower covenants and agrees to continue to provide periodic updates to the Lenders as to the status of efforts to secure additional debt financing upon request by the Agent and will ensure that Agent has the ability to discuss such efforts directly with representatives from Candlewood Partners LLC and any other intermediary assisting in such efforts;

(n)     On or before October 31, 2007, the Borrower shall provide to Agent a written plan detailing the Borrower's intended disposition of the equipment financed pursuant to Term Loan B (provided, if at any time such equipment is sold, such sale shall be on terms acceptable to Agent and the Lenders, and 100% of the proceeds thereof shall be promptly paid to Agent, for application against amounts then outstanding with respect to Term Loan B or, if Term Loan B is paid in full, to Term Loan A);

(o)     On or before October 26, 2007, the Borrower shall deliver a schedule of tooling invoices and corresponding open payables relating to each such invoice, in form and substance acceptable to Agent and the Lenders; and

(p)     During the Forbearance Period, the amount of setoff taken by Designated Customers with respect to any Account owing by such Designated Customer to Borrower shall not exceed the amount permitted in the Accommodation Agreement (which condition shall only be deemed to be breached after notice and an opportunity to cure as set forth in the balance of this subparagraph). If a Designated Customer takes a setoff in excess of the amount permitted in the Accommodation Agreement, Lenders shall notify such Designated Customer in writing in accordance with the notice provisions of the Accommodation Agreement and the applicable Designated Customer shall have 10 days to cure such breach.

**5.     REPRESENTATIONS AND WARRANTIES.** All of the Borrower's representations and warranties contained in this Amendment shall survive the execution,

delivery and acceptance of this Amendment by the Agent and Lenders. The Borrower hereby represents and warrants to the Agent and Lenders that:

(a)    The execution and delivery of this Amendment and the performance by the Borrower of its obligations hereunder are within the Borrower's corporate powers and authority, have been duly authorized by all necessary corporate action and do not and will not contravene or conflict with the articles of incorporation, bylaws or other organizational documents of the Borrower. This Amendment has been duly executed and delivered by the Borrower, and constitutes the legal, valid and binding obligation of the Borrower, enforceable against the Borrower in accordance with its terms, subject to the effect of any applicable Bankruptcy, insolvency, reorganization or similar law affecting creditors' rights generally;

(b)    As of the date of this Amendment, no Event of Default, or Defaults which, except for the passage of time or notice would constitute an Event of Default, exist under the Loan Documents other than the Current Defaults;

(c)    All representations and warranties contained in the Loan Documents are true and correct in all material respects on the date hereof (other than as a result of the existence of the Current Defaults) and the Borrower hereby acknowledges and reaffirms such representations and warranties with respect to the Loan Documents as of the date of this Amendment, except to the extent that such representations and warranties specifically refer to an earlier date, in which case they shall be true and correct in all material respect as of such earlier date;

(d)    The Borrower has read and understands the contents of this Amendment and has had an opportunity to review and consider the terms of this Amendment with counsel of its choice;

(e)    As of the date hereof, no tooling of any customer has been removed by any customer from any of the Borrower's facilities; further, the Borrower has not received any written or oral notification of any customer's intent to remove any such tooling from any of the Borrower's facilities; and

(f)    The Borrower acknowledges and agrees that it shall provide to the Agent and the Lenders, and their respective consultants, unconditional access to the Borrower's facilities, employees and books and records.

6.    **RESERVATION OF RIGHTS.**  The forbearance of the Lenders shall be limited precisely as written and, except as expressly set forth herein or in the Forbearance Agreement, neither the fact of the Agent's and Lenders' forbearance nor any other term or provisions herein shall, or shall be deemed or construed to, (i) be a consent to any additional forbearance, waiver, amendment or modification of any term, provision or condition of the Loan Documents, (ii) affect, impair, operate as a waiver of, or prejudice any right, power or remedy which the Agent and/or Lenders may now or hereafter have pursuant to the Loan Documents or any other document, agreement, security agreement

or instrument executed in connection with or related to the Loan Documents, or at law or in equity or by statute including, without limitation, with regard to any existing or hereafter arising Event of Default, (iii) impose upon the Agent or Lenders any obligation, express or implied, to consent to any amendment or further modification of the Loan Documents or (iv) be a consent to any waiver of any existing Event of Default (including, without limitation, the Current Defaults), all such Events of Defaults remaining outstanding. The Agent and Lenders hereby expressly reserve all rights, powers and remedies specifically given to them under the Loan Documents or now or hereafter existing at law, in equity or by statute.

7.    **RELEASES; INDEMNITIES**.

(a)    In further consideration of the Agent's and Lenders' execution of this Amendment, the Borrower, individually and on behalf of its successors (including, without limitation, any trustees acting on behalf of the Borrower and any debtor-in-possession with respect to the Borrower), assigns, subsidiaries and affiliates (collectively, the "**Releasors**"), hereby forever releases the Agent, Lenders and their successors, assigns, parents, subsidiaries, affiliates, past or present officers, employees, directors, agents and attorneys (collectively, the "**Releasees**") from any and all debts, claims, demands, liabilities, responsibilities, disputes, causes, damages, actions, causes of actions (whether at law or in equity) and obligations of every nature whatsoever, whether liquidated or unliquidated, whether known or unknown, matured or unmatured, fixed or contingent (collectively, "**Claims**") that Releasors may have against the Releasees which arise from or relate to any actions which the Releasees may have taken or omitted to take prior to the date this Amendment was executed, including, without limitation, with respect to the Liabilities, any Collateral, the Loan Documents, or any third parties liable in whole or in part for the Liabilities, except for the actions arising from the gross negligence or willful misconduct of the Releasees as determined by a final non-appealed judgment from a court of competent jurisdiction. This provision shall survive and continue in full force and effect whether or not (i) the Borrower shall satisfy all other provisions of this Amendment or the Loan Documents, including payment in full of all Liabilities, (ii) this Amendment otherwise is terminated, or (iii) the Agent's and Lenders' forbearance ceases pursuant to this Amendment.

(b)    Releasors hereby agree to indemnify and hold the Releasees harmless with respect to any and all liabilities, claims, obligations, losses, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by the Releasees, or any of them, whether direct, indirect or consequential, as a result of or arising from or relating to any proceeding, whether threatened or initiated, asserting any claim for legal or equitable remedy under any statutes, regulations or common law principles arising from or in connection with the negotiation, preparation, execution, delivery, performance, administration and enforcement of the Loan Documents, this Amendment or any other document executed in connection herewith, except for the claims arising from the gross negligence or willful misconduct of the

Releasees as determined by a final non-appealed judgment from a court of competent jurisdiction. The foregoing indemnity shall survive the payment in full of the Liabilities and the termination of this Amendment and the Loan Documents.

8. **ACKNOWLEDGMENT OF VALIDITY AND ENFORCEABILITY OF LOAN DOCUMENTS.** The Borrower expressly acknowledges and agrees that the Loan Documents constitute legal, valid and binding obligations enforceable in accordance with their terms by the Agent and Lenders against the Borrower subject to bankruptcy, insolvency, reorganization moratorium and other laws with general application affecting the rights and remedies of creditors and secured parties, and general principles of equity regardless of whether applied in a proceeding in equity or at law, and expressly reaffirms its obligations under the Loan Documents (as amended by this Amendment), including, without limitation, the Liabilities and the security interests granted therein. The Borrower further expressly acknowledges and agrees that the Agent and Lenders have a valid, duly perfected, fully enforceable security interest in and lien on the Collateral except as otherwise expressly stated in the Loan Documents.

9. **AMENDMENTS.** No amendment or modification of any provision of this Amendment shall be effective without the written agreement of the Agent, Lenders and the Borrower, and no termination or waiver or any provision of this Amendment, or consent to any departure by the Borrower from such provisions, shall in any event be effective without the written concurrence of the Agent and Lenders. Any waiver or consent shall be effective only in the specific instance and for the specific purpose for which it was given.

10. **NO WAIVER.** The Agent's or Lenders' failure at any time to require strict performance by the Borrower of any provision or term of the Loan Documents or this Amendment shall not waive, affect or diminish any right of the Agent or Lenders thereafter to demand strict compliance and performance therewith. Any suspension or waiver by the Agent and Lenders of a Forbearance Event of Default or any Event of Default shall not, except as may be expressly set forth herein, suspend, waive or affect any other Forbearance Event of Default or any Event of Default (other than the Current Defaults), whether the same is prior or subsequent thereto and whether of the same or of a different kind or character. None of the undertakings, agreements, warranties, covenants and representations of the Borrower contained in this Amendment or the Loan Documents, and no Forbearance Event of Default or Event of Default, shall be deemed to have been suspended or waived by the Agent and Lenders unless such suspension or waiver is (a) in writing and signed by the Agent and Lenders, and (b) delivered to the Borrower.

11. **SUCCESSORS AND ASSIGNS.** This Amendment shall be binding upon the Borrower and its successors and assigns and shall inure to the benefit of the Agent, Lenders and their successors and assigns.

12. **LIMITATION ON RELATIONSHIP BETWEEN PARTIES.** The relationship of the Agent and Lenders, on the one hand, and the Borrower, on the other

hand, has been and shall continue to be, at all times, that of creditors and debtors and not as joint venturers or partners. Nothing contained in this Amendment, any instrument, document or agreement delivered in connection herewith or in the Loan Documents shall be deemed or construed to create a fiduciary relationship between or among the parties.

13.    **NO ASSIGNMENT.**  This Amendment shall not be assignable by the Borrower without the written consent of the Agent and Lenders. The Agent and Lenders may freely assign to one or more Persons all or any part of, or any participation interest in, the Agent's and Lenders' rights, obligations and benefits hereunder.

14.    **SECTION TITLES.**  The Section titles contained in this Amendment are included for the sake of convenience only, shall be without substantive meaning or content of any kind whatsoever, and are not a part of the agreement among the parties.

15.    **GOVERNING LAW; CONSENT TO FORUM.**  THIS AMENDMENT HAS BEEN NEGOTIATED, EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF ILLINOIS.  THIS AMENDMENT AND THE LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF ILLINOIS; PROVIDED, HOWEVER, THAT IF ANY OF THE COLLATERAL SHALL BE LOCATED IN ANY JURISDICTION OTHER THAN THE STATE OF ILLINOIS, THE LAWS OF SUCH JURISDICTION SHALL GOVERN THE METHOD, MANNER AND PROCEDURE FOR FORECLOSURE OF THE LENDERS' LIEN UPON SUCH COLLATERAL AND THE ENFORCEMENT OF THE LENDERS' OTHER REMEDIES IN RESPECT OF SUCH COLLATERAL TO THE EXTENT THAT THE LAWS OF SUCH JURISDICTION ARE DIFFERENT FROM OR INCONSISTENT WITH THE INTERNAL LAWS OF THE STATE OF ILLINOIS.  AS PART OF THE CONSIDERATION FOR NEW VALUE RECEIVED, AND REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE BORROWER, THE BORROWER, AGENT AND THE LENDERS HEREBY CONSENT AND AGREE THAT THE FEDERAL OR STATE COURTS OF ILLINOIS, OR, AT THE AGENT'S OR LENDERS' OPTION, ANY OTHER COURT IN WHICH THE AGENT OR LENDERS SHALL INITIATE LEGAL OR EQUITABLE PROCEEDINGS AND WHICH HAS SUBJECT MATTER JURISDICTION OVER THE MATTER IN CONTROVERSY, SHALL HAVE EXCLUSIVE JURISDICTION TO HEAR AND DETERMINE ANY CLAIMS OR DISPUTES BETWEEN THE BORROWER AND THE AGENT AND LENDERS PERTAINING TO THIS AMENDMENT OR THE LOAN DOCUMENTS.  THE BORROWER EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT, AND THE BORROWER HEREBY WAIVES ANY OBJECTION WHICH THEY MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING FOR SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT.  THE BORROWER HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS, COMPLAINT AND OTHER PROCESS ISSUED IN ANY SUCH ACTION OR SUIT AND AGREES THAT SERVICE OF

SUCH SUMMONS, COMPLAINT AND OTHER PROCESS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO THE PARENT AND THAT SERVICE SO MADE SHALL BE DEEMED COMPLETED UPON THE EARLIER OF THE PARTY'S ACTUAL RECEIPT THEREOF OR THREE (3) DAYS AFTER DEPOSIT IN THE U.S. MAIL, PROPER POSTAGE PREPAID. NOTHING IN THIS AMENDMENT SHALL BE DEEMED OR OPERATE TO AFFECT THE RIGHT OF THE LENDERS TO SERVE LEGAL PROCESS IN ANY OTHER MANNER PERMITTED BY LAW, OR TO PRECLUDE THE ENFORCEMENT BY THE AGENT OR LENDERS OF ANY JUDGMENT OR ORDER OBTAINED IN SUCH FORUM OR THE TAKING OF ANY ACTION UNDER THIS AMENDMENT TO ENFORCE SAME IN ANY OTHER APPROPRIATE FORUM OR JURISDICTION.

16.  **WAIVERS BY BORROWER.** THE BORROWER WAIVES (i) THE RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING OR COUNTERCLAIM OF ANY KIND ARISING OUT OF OR RELATED TO THIS AMENDMENT, THE LOAN DOCUMENTS, THE OBLIGATIONS OR THE COLLATERAL; (ii) PRESENTMENT, DEMAND AND PROTEST AND NOTICE OF PRESENTMENT, PROTEST, DEFAULT, NONPAYMENT, MATURITY, RELEASE, COMPROMISE, SETTLEMENT, EXTENSION OR RENEWAL OF ANY OR ALL COMMERCIAL PAPER, ACCOUNTS, CONTRACT RIGHTS, LOAN DOCUMENTS, DOCUMENTS, INSTRUMENTS, CHATTEL PAPER AND GUARANTIES AT ANY TIME HELD BY THE AGENT OR LENDERS ON WHICH THE BORROWER MAY IN ANY WAY BE LIABLE AND HEREBY RATIFIES AND CONFIRMS WHATEVER THE AGENT OR LENDERS MAY DO IN THIS REGARD; (iii) NOTICE PRIOR TO TAKING POSSESSION OR CONTROL OF THE COLLATERAL OR ANY BOND OR SECURITY WHICH MIGHT BE REQUIRED BY ANY COURT PRIOR TO ALLOWING THE AGENT AND LENDERS TO EXERCISE ANY OF THE AGENT'S AND LENDERS' REMEDIES; AND (iv) THE BENEFIT OF ALL VALUATION, APPRAISEMENT AND EXEMPTION LAWS AND ALL RIGHTS WAIVABLE UNDER ARTICLE 9 OF THE UNIFORM COMMERCIAL CODE.

17.  **NOTICES.** Except as otherwise provided herein, all notices, requests and demands to or upon a party hereto to be effective shall be in writing and shall be sent to the addresses and by the means specified in the Loan Agreement.

18.  **EXECUTION IN COUNTERPARTS/FACSIMILE.** This Amendment may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Facsimile and electronic ".PDF" signatures shall be binding on the parties.

19.  **INTEGRATION.** This Amendment embodies the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior oral or written negotiations, agreements and understandings of the parties with respect to the subject matter hereof, provided, however, that except as

expressly modified herein, the Loan Documents shall remain in full force and effect in accordance with their respective terms and conditions.

20.    **TIME OF ESSENCE.**  Time is of the essence in this Amendment and the Loan Documents.

21.    **CONSENT.**  Agent and the Lenders hereby consent and agree to the items set forth in Section 2(b), (c), (e), (f) and (g) of the Memorandum of Understanding Regarding Accommodations for Blackhawk Automotive Plastics, Inc. dated August 1, 2007 ("**MOU**") among Borrower, Designated Customers, Agent and Key Equity Capital, a copy of which is attached hereto as Exhibit C.

\* \* \* \* \* \*

[SIGNATURE PAGES FOLLOW]

(Signature Page to Fourth Amendment to Forbearance Agreement and
Sixth Amendment to Loan and Security Agreement)

BLACKHAWK AUTOMOTIVE
PLASTICS, INC.

By: _____

Its: _____Presiden & CEO_____

CHICAGO/#1673544.6

(Signature Page to Fourth Amendment to Forbearance Agreement and
Sixth Amendment to Loan and Security Agreement)

LASALLE BUSINESS CREDIT, LLC, as
Agent and a Lender

By: _____

Its: _FIRST VICE PRESIDENT_____

(Signature Page to Fourth Amendment to Forbearance Agreement and
Sixth Amendment to Loan and Security Agreement)

CITIZENS BANK, a Michigan banking
corporation, as a Lender

By: _Charles D. Stephenson_

Its: _SENIOR VICE PRESIDENT_

_CHARLES D. STEPHENSON_

## EXHIBIT A

### CLOSING DOCUMENT LIST

(See Attached)

## EXHIBIT B

### ADDITIONAL EVENTS OF DEFAULT

1.    Failure to provide weekly actual to budget variance reports.

2.    Failure to deliver an assignment agreement with respect to the STOPOL auction "put" right.

3.    Failure to meet the EBITDA covenant for June, July and August 2007.

4.    Failure to pay principal amount of Term Loan B as agreed.

5.    Failure to comply with Sections 5(e) and 5(f) of the Forbearance Agreement and Amendment to Loan Agreement and Letter Agreement dated as of March 28, 2007.

## EXHIBIT C

### MEMORANDUM OF UNDERSTANDING

(See Attached)

CHICAGO/#1673544.6